UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY ROSARIO, INDIVIDUALLY, ) <br> AS SHE IS THE ADMINISTRATRIX OF ) <br> THE ESTATE OF AWILDA SANTIAGO, ) <br> ESSEX PROBATE COURT DOCKET ) <br> #03P-2499AD1, P/P/A VERONICA ) <br> ROSARIO AND CHRISTINA SANTIAGO, ) <br> AND AS SHE IS THE ADMINISTRATRIX ) <br> OF THE ESTATE OF JOSE SANTIAGO, ) <br> BERLIN (CONNECTICUT) PROBATE ) <br> COURT, CASE #03-0713 ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> RARE HOSPITALITIES INTERNATIONAL, ) <br> INC. d/b/a LONGHORN STEAKHOUSE ) <br> ) <br> Defendant ) | Civil Action Number: <br> 05-CV-10617MLW |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Now comes the defendant, RARE Hospitalities International Inc., d/b/a LongHorn Steakhouse ("RARE"), and hereby submits a reply brief in response to Plaintiff's Opposition to its Motion for Protective Order.

I. **ARGUMENT**

A. **JUDE CONNELLY'S DEPOSITION TESTIMONY WAS CONSISTENT WITH HIS STATE COURT DEPOSITION.**

Plaintiff's counsel states that the deposition of John DiNatale is necessary because there were "profound changes in [Jude Connelly's] testimony from that which he gave in deposition in the State Court actions." In reality, Connelly's testimony is entirely consistent with the testimony he had given at deposition in the *Rosario v. Soutworth*, CA 04-0494 (Middlesex Superior) hereinafter the "State Court Action".

1

The Plaintiff cites to Connelly's testimony in relation to the amount Jeffrey Southworth had to drink on September 26, 2003 to show inconsistencies in Connelly's testimony. In reality, Connelly testified the same way at his State Court deposition as he did during his deposition in *Rosario v. RARE Hospitalities International, Inc.*, CA 05-CV-10617MLW (Federal District Court) hereinafter "the instant action" :

Q: And during that time, the 15 to 20 minutes it took for the table to be cleared, did you see Jeff Southworth drinking at all?
A: Yes.
Q: What did you see him drinking?
A: He had a beer.
*State Court Deposition of Jude Connelly* at 28:3-8.

Said testimony is entirely consistent with the testimony given by Connelly in the instant action. In fact, his response is almost verbatim:

Q: At the bar, did you see Mr. Southworth drinking at all?
A: I did.
Q: What did you see him drinking?
A: I saw him drinking a beer.
*Federal District Court Deposition of Jude Connelly* at 12:3-7.

Plaintiff intimates that Jude Connelly's testimony concerning the bar tab was somehow influenced by investigator John DiNatale. In actuality, Connelly's testimony did not change:

Q: So who paid the bar tab?
A: You know what? I think he actually had the – whatever the bill was, I think they just had it sent to our table and added it on to the end. I don't believe – I don't remember anyone paying right at the bar. I may be mistaken on that, but I seem to remember that as being what happened.
*State Court Deposition* at 35:5-12.

Once again, this testimony is entirely consistent with the testimony that Jude Connelly gave in the instant action.

Q: When he showed you Exhibit 2, what did he say about it? Exhibit 2 is the tab.

2

A: Well, he first asked me what I remembered being ordered and who was drinking and who was at the table, and *I told him that I thought that the tab was brought over from the bar*, and he asked me what I remembered being ordered at the bar, and he counted up the number of Jack Daniels drinks that were ordered and the number of beers in Exhibit 2. *Federal Court Deposition* at 49:6-15 (emphasis added).

John DiNatale's very limited 15-20 minute conversation with Jude Connelly did not change the nature of his testimony. Connelly in review of the bill from the evening in question confirmed his recollection of the events of that evening..

Defendant does not argue that Connelly changed his testimony from the State Court deposition where he stated that Southworth may have had four beers at the LongHorn table. The bill from the evening in question shows that to be an impossibility. DiNatale showing Connelly documentary evidence which has not and cannot be refuted is in no way impermissible.

### B. PLAINTIFF'S COUNSEL NOT JOHN DINATALE ATTEMPTED TO INFLUENCE THE TESTIMONY OF WITNESSES IN THIS ACTION.

Plaintiff's Opposition to said Motion for Protective order is disingenuous particularly where plaintiff's counsel repeatedly asked misleading questions geared solely at confusing the witness in hopes of inappropriately garnering favorable testimony.

Plaintiff brought an action against Enterprise Rent-A-Car and Jeffrey Southworth in Massachusetts Superior Court with regards to the events in question. Plaintiff's counsel took the Superior Court case as an opportunity to depose percipient witnesses in the instant action with no counsel for RARE Hospitality present. He then focused his entire energy on trying to gather evidence for the case at bar, which had yet to be filed, by harassing witnesses. The questions he asked of said witnesses were not objected to and he was able to gather tainted evidence.

The State Court Deposition of Jude Connelly is replete with examples of Attorney Farrah asking a question, not getting the response he was looking for, and then asking the same question numerous times. When asked the first time, the following testimony was elicited:

Q: And during that time, the 15 to 20 minutes it took for the table to be cleared, did you see Jeff Southworth drinking at all?
A: Yes.
Q: What did you see him drinking?
A: He had a beer.
*State Court Deposition of Jude Connelly* at 28:3-8.

Farrah did not like this answer and subsequently asked the same question over and over.

Q: Do you know whether or not Jeff had more than one beer while he was at the bar?
A: You know, I think he did. I'm not – I don't know for a fact, but, you know, he probably did.
*State Court Deposition of Jude Connelly* at 28:22-24; 29:1-2.

Q: By the way, I just want to sort of ask the question one more way. Is it your best memory as you sit here now that while he was at the bar, Jeff Southworth had more than one beer?
A: I'd say so, yes.
*State Court Deposition of Jude Connelly* at 30:15-20.

Farrah now wants this Court to adopt the testimony given by Connelly after being asked the same question a second and third time, but seemingly ignore the testimony given by Connelly when he was not asked an impermissibly leading question. It was Farrah's leading questions, and nothing said by investigator John DiNatale which led to any inconsistencies in Connelly's testimony.

In terms of the bar tab, Attorney Farrah, once again, asked the same question numerous times trying to elicit different answers from Connelly:

Q: Who paid the bar tab?
A: Well, I didn't – Jeff paid for me. But everyone else paid for themselves.
*State Court Deposition* at 34:23-24; 35:1.

4

Attorney Farrah was clearly not satisfied with this response so he asked the same question a few more times in order to get the witness to change his testimony:

Q: So who paid the bar tab?
A: You know what? I think he actually had the – whatever the bill was, I think they just had it sent to our table and added it on to the end. I don't believe – I don't remember anyone paying right at the bar. I may be mistaken on that, but I seem to remember that as being what happened.

*State Court Deposition* at 35:5-12.

Q: You didn't pay the bar tab; is that right?
A: Yeah. Well, actually, I didn't have any money or anything on me, so Jeff told me he'd buy me dinner.
*State Court Deposition* at 35:13-14.

It was not until counsel for the Plaintiff began to harass the witness by asking him the same questions over and over again, that the witness began to waver on his answers during the State Court deposition. Such questions would reasonably have been objected to as asked and answered, however, counsel for RARE Hospitality was not invited to attend the deposition of Jude Connelly in the State Court action[1]. As a result, Plaintiff's counsel impermissibly led the witness without objection and was able to ask questions numerous times until he got a semblance of an answer that he was looking for instead of Connelly's actual memory as to events that took place on September 26, 2003.

There are numerous other examples in the State Court deposition which point to Plaintiff counsel's attempt to taint the record. One poignant example involves any visible signs of intoxication exhibited by Jeffrey Southworth:

Q: Was Jeff particularly loud that evening at the table?

---

[1] Interestingly, although Enterprise Rent-A-Car was a named party in the State Court action, Attorney Farrah asked nary a question with respect to the automobile that Southworth was driving the night in question. Rather, Farrah chose to focus his energy on RARE Hospitality, who was not represented and whom the Plaintiff had clearly contemplated bringing suit against.

5

A: Um, not particularly loud. But, you know, pretty – not real loud, but I guess everyone was loud enough to have a waiter or someone come over and ask us to tone it down.
*State Court Deposition* at 43:22-24; 44:1-3.

Despite making it clear that the entire table was loud, and Jeffrey Southworth was *not particularly loud,* Attorney Farrah continued to ask Connelly the same question until the record could reflect the answer he was looking for:

Q: Was he louder than he usually appeared to you?
A: Yeah, I mean, yeah.
*State Court Deposition* at 50:12-14.

It is quite clear in an examination of the State Court deposition, that Attorney Farrah impermissibly attempted to influence Jude Connelly's testimony. This problem was further compounded in that this occurred before RARE was a party and before they had representation.

### C. PLAINTIFF HAS FAILED TO CITE ANY CASE LAW TO SUPPORT HER POSITION.

Despite its filing of a twenty (20) page opposition to the instant Motion for Protective Order, Plaintiff, through her counsel, has yet to cite one case to support the position that Defendant's investigator should be deposed.

Counsel for the defendant repeatedly asked plaintiff's counsel the reason for which he needs DiNatale's deposition, and repeatedly no articulated reason had been offered. In his memorandum in Opposition of a Protective Order, Plaintiff's counsel does not deny that he had never, until his filing of this opposition, articulated to Defense counsel, any reason for which he felt DiNatale's deposition testimony was discoverable. Quite clearly, Plaintiff's counsel had a very good idea as to why he felt that this deposition testimony was necessary. Under the Federal Rules and the United States Code, in order to avoid this motion, he should

have articulated this reason and resolve a discovery dispute without court action. This is clearly a waste of both judicial time and resources.

Plaintiff is defending her position by providing this Court with misleading inaccurate "facts" and not citing any case law relevant to the dispute at issue. Plaintiff has cited no supporting authority as to why the information sought is not work product. Plaintiff chooses to rely on blanket cases which speak about discovery generally but do not address the specific issue of whether information obtained by a private investigator constitutes work product. To date, only the Defendant has cited to any such case, and the United States Supreme Court has been clear that such information is protected. *United States v. Nobles*, 422 U.S. 225, 239 (1975). Instead of properly addressing any legal dispute, Plaintiff's counsel instead relies on misstatements and conjecture.

## II.     CONCLUSION

Jude Connelly's deposition testimony in the instant case was very much congruent with his deposition testimony in the State Court action. Moreover, John DiNatale is not a percipient witness and can testify as to nothing with the exception of protected work product. Plaintiff's failure to provide support for her position, requiring this hearing, warrants sanctions to prevent further abuses.

WHEREFORE, the Defendant respectfully requests that this Honorable Court grant his Motion for a Protective Order.

The Defendant,
By Its Attorneys,

*/s/ Michael K. Gillis*
Michael K. Gillis, Esq.
BBO# 543551
Neil D. Schnurbach, Esq.
BBO# 664534
GILLIS & BIKOFSKY, P.C.
1150 Walnut Street
Newton, MA 02461
Tel. 617-244-4300

### CERTIFICATE OF SERVICE

I, Michael K. Gillis, of Gillis & Bikofsky, P.C., attorneys for Rare Hospitalities International, Inc., hereby certify that on August __, 2006, a true copy of the above document was served upon all counsel of record by in hand service.

RARE HOSPITALITIES INTERNATIONAL,
INC. d/b/a LONGHORN STEAKHOUSE
By its Attorneys,

*/s/ Michael K. Gillis*
Michael K. Gillis, Esq.
GILLIS & BIKOFSKY, P.C.
1150 Walnut Street
Newton, MA 02461
(617) 244-4300
BBO# 543551

8