UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NANCY ROSARIO, INDIVIDUALLY, AS<br>SHE IS THE ADMINISTRATRIX OF THE<br>ESTATE OF AWILDA SANTIAGO, ESSEX<br>PROBATE COURT DOCKET #03P-2499AD1 and<br>AND AS SHE IS THE ADMINISTRATRIX OF<br>THE ESTATE OF JOSE SANTIAGO, BERLIN<br>(CONNECTICUT) PROBATE COURT,<br>CASE #03-0713 AND NANCY ROSARIO AND<br>MICHAEL MILLER, AS GUARDIANS OF<br>CHRISTINA SANTIAGO AND VERONICA<br>ROSARIO, ESSEX PROBATE COURT DOCKET<br>#06P-0507GM<br>          <u>Plaintiffs</u><br><br>v.<br><br>RARE HOSPITALITY INTERNATIONAL, INC.<br>d/b/a LONGHORN STEAKHOUSE<br>          <u>Defendant</u> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action #05-CV-10617MLW |

## JOINT PETITION FOR APPROVAL OF SETTLEMENT
## PURSUANT TO G.L. CH. 231, §140C½

This petition is filed by the plaintiffs, Nancy Rosario ("Nancy"), in her capacity as guardian

and mother and next of kin of Veronica Rosario and Christina Santiago, in her capacity as

Administratrix of the Estate of Awilda Santiago, Essex Probate Court #03P-2499AD1, and in her

capacity as Administratrix of the Estate of Jose Santiago, Berlin, Connecticut Probate Court Case

#03-0713 and Michael Miller, in his capacity as guardian of Veronica Rosario and Christina

Santiago and the defendant, RARE Hospitality International, Inc., d/b/a Longhorn Steakhouse

("RARE"), seeking a Court approved settlement pursuant to Massachusetts General Laws, c. 231,

§140C½.

This action arises out of a September 27, 2003 motor vehicle accident on Route 495 in Westford, Massachusetts, when a Dodge truck, operated by Jeffrey Southworth ("Southworth"), crashed into the rear of a Honda Accord driven by Jose Santiago. Riding with Jose in the Honda were his three daughters, Awilda Santiago, Christina Santiago and Veronica Rosario. Jose and Awilda died in the accident and Christina and Veronica were seriously injured in the crash.

Southworth was tried and convicted in Middlesex Superior Court of various charges arising out of the accident. On September 29, 2005, he was sentenced to significant prison sentences which he is currently serving.

As the result of the losses suffered in the accident, Plaintiff filed this "dram shop" action against RARE, the owner of the restaurant at which Southworth was drinking earlier in the evening, claiming that RARE served Southworth alcoholic beverages when it knew, or should have known, he was intoxicated, in violation of Massachusetts law. For its part, RARE has vigorously defended this action, contesting both liability and the extent and value of any injuries and damages.

## I.     THE PARTIES

a.     Plaintiffs

Nancy Rosario is parent and next friend of Veronica Rosario (age 15) and Christina Santiago (age 16). She is also Administratrix of the Estate of Awilda Santiago, Essex Probate Court #03P-2499AD1 and Administratrix of the Estate of Jose Santiago, Berlin (Connecticut) Probate Court #03-0713.

Michael Miller is an attorney practicing law in Lawrence, Massachusetts. He is currently a member in good standing of the bar of the Commonwealth of Massachusetts and of this Court.

b.     Defendant

RARE is a publicly traded corporation, organized under law, with a principal place of

business at 8215 Roswell Road, Building 200, Atlanta, Georgia.  It operates restaurants

throughout the eastern United States under the names Long Horn Steakhouse, Capital Grille and

Bugaboo Creek Steakhouse.

## II.     PLAINTIFFS' POSITION REGARDING INJURIES

a.     Christina's Injuries

Christina suffered a traumatic brain injury in the accident.  Post accident testing has

confirmed she now suffers from overall intellectual functioning in the low average to borderline

range with evidence of a clinically significant attention problem, characterized by inattention and

limitations in vigilance, problems in mental control, self-monitoring, and working memory.  She

has difficulties learning and remembering new information, particularly auditory information,

and limitations in vocabulary, with evidence of word-finding difficulties both to confrontation

and in spontaneous speech.   Christina, who was an average student prior to the accident, in

regular classes and otherwise healthy, is now a ninth grade student at Lawrence High School in

special education.

b.     Veronica's Injuries

Veronica suffered multiple trauma to the brain, face, chest, spine and abdomen, including

cerebral contusions, at T4-5 and multiple spleenic contusions with fracture of the anterior spleen.

In addition, Veronica suffered multiple body and corneal abrasions. Veronica was with Awilda

Santiago and Jose Santiago when they died.  She has suffered, and will continue to suffer,

emotional distress as a result of this accident and her loss, including various physical

Petition for Approval of Settlement
7/2/07

manifestations of her mental distress.

    c.    <u>Other Injuries and Claims</u>

In addition to the claims of Christina and Veronica, claims were brought for Jose's death, Awilda's death and Nancy's injuries and damages.

### III.    <u>RARE'S POSITION ON LIABILITY AND DAMAGES</u>

RARE denies Southworth was intoxicated or showing visible signs of intoxication when it served him his last drink on September 26, 2003 and consequently denies it in any way was the legal cause of the damages suffered by Christina and Veronica. Consistent with that position, RARE filed with this court a Motion for Summary Judgment which was scheduled to be heard on June 6, 2007, along with a Motion to Strike portions of the testimony of plaintiffs' expert toxicologist, David Benjamin.

It is also RARE's position, as expressed by its experts, that Christina made an excellent recovery from the brain injury she suffered, and that her present intellectual and cognitive levels are approximately the same as those that existed prior to the accident of September 26, 2003.

### IV.    <u>MEDIATION</u>

Several months ago, the parties agreed to attempt to resolve this dispute by means of mediation and in connection therewith, agreed upon a mediator, John Fitzgerald of the law firm of Cogavin & Waystack, One Center Plaza, Boston, MA. Attorney Fitzgerald is a widely respected member of insurance defense bar, experienced in the defense of dram shop actions, a member of the board of directors of the Massachusetts Defense Lawyers Association and a fellow of the American College of Trial Lawyers. Attorney Fitzgerald is a highly regarded mediator and coincidently, acted as the guardian ad litem for Christina and Veronica in

connection with an earlier settlement in the matter of <u>Nancy Rosario, et al</u> v. <u>Jeffrey Southworth, et al</u>, Middlesex Superior Court C.A. #03-4704L2, a state court civil action arising out of this automobile accident. In that capacity, he met Christina, Veronica and Nancy, their mother, and became familiar with the girls' injuries. Attorney Fitzgerald's role as guardian ad litem in the state court civil action was fully disclosed to RARE, which nonetheless joined with the plaintiffs in requesting Attorney Fitzgerald act as mediator in this case.

On May 16, 2007, at a mediation conducted by Attorney Fitzgerald that lasted until approximately 6:30 p.m., the parties settled all claims of all plaintiffs in this action for a total of $3.8 million. Participating in that mediation, and thus benefiting from Attorney Fitzgerald's perspectives and experience in similar matters, were Nancy and Attorney Miller, as well as counsel for the plaintiffs, Attorney Albert L. Farrah, Jr. and Louis J. Farrah, II.

## V.    TERMS AND CONDITIONS OF SETTLEMENT

Both Veronica and Christina, through Nancy and Attorney Miller, as co-guardians, have fully discussed with plaintiffs' counsel the issues surrounding liability and damages and the finality of this settlement. On their behalf, Nancy and Attorney Miller elect to avoid the risks and uncertainties of these claims. The net proceeds to claimants of the total settlement of $3,800,000 have been apportioned as follows:

1. Christina Santiago's injuries: $1,188,079.02

2. Veronica Rosario's injuries:  $183,859.84

3. Nancy Rosario's injuries:     $230,192.01

4. Death of Awilda Santiago, no conscious pain and suffering: $374,687.99

5. Death of Jose Santiago, no conscious pain and suffering:  $372,997.79

There was no evidence that either Awilda Santiago or Jose Santiago suffered consciously

5/24/07

before their deaths. Under the Massachusetts wrongful death statute, M.G. L., c. 229, sections 1 and 2, the administratrix brings this a death action on behalf of the next of kin of the decedent. In the case of Awilda, her mother is her next of kin. Jose's next of kin are his three daughters, Christina, Veronica and Natasha Santiago, his child with Aileen Lopez. Because of the evidence of Jose's close, ongoing relationship with Natasha, and of his less regular interactions with Christina and Veronica, funds recovered in connection with Jose's death will be distributed 2/3 to Natasha, 1/6 to Christina and 1/6 to Veronica.

A complete listing of all proposed disbursements of the $3.8 million settlement is attached as Exhibit A.

## VI.   PROPOSED DISTRIBUTION OF SETTLEMENT PROCEEDS

### a.   Legal Fees

i.   Executed contingent fee agreements with counsel call for payment of one-third of any gross amounts recovered <u>and</u> all expenses of litigation advanced by counsel prior to any distribution of net proceeds to plaintiffs. Legal fees of $1,266,666.66, which is 1/3 of $3,800,000, will be disbursed to Attorneys Albert L. Farrah, Jr. and Louis Farrah, II.

ii.   To be deducted from the net proceeds due to Natasha are:

a)   Legal fees, of $4,750 to attorney Thomas R. Lindberg, LLC, in connection with his role as Natasha's court appointed guardian ad litem, for services performed and to be performed, as described on his bill, attached as Exhibit C. Attorney Lindberg 's fees have been apportioned entirely to Natasha's recovery; and

b)   Legal fees in the amount of $12,687 to attorney James Tarshi for services performed and to be performed, for the benefit of Natasha and her mother, as described on his bill, attached as Exhibit D. Attorney Tarshi's fees have been apportioned entirely to Natasha's

7/2/07

recovery.

  iii. To be deducted from the net proceeds due to Christina and Veronica are:

  a) Legal fees, of $20,675 to attorney Michael Miller, in connection with his role as co-guardian of Christina and Veronica for services performed and expenses incurred to date, and to be incurred in connection with a planned trip to Florida to investigate potential housing options for Nancy Rosario and her family. Attorney Miller's fees, as described in his bill attached as Exhibit E, have been apportioned ½ to Christina's recovery and ½ to Veronica's recovery; and

  b) Legal fees in the amount of $4,500 to attorney Ken Shulman for creating an Irrevocable Special Needs Trust for Christina and a Trust for Veronica. Attorney Shulman's fees have been appropriated ½ to Christina's recovery and ½ to Veronica's recovery.

  **b.** **Reimbursement of Expenses Advanced to Date in this Litigation and Payment of Outstanding Expenses of Litigation**

  To date, plaintiffs' attorneys have incurred $59,876 in un-reimbursed expenses in prosecuting this litigation (see list attached as Exhibit F). From the settlement proceeds, the full amount of $59,843 will be repaid to counsel.

  The following unpaid bills will also be paid from the settlement proceeds:

  1. Dr. Bruce Price, $16,250, expert witness for Christina;

  2. Ken Shulman, $1,660, expert witness for Christina;

  3. McLean Hospital, $1,950, diagnostic services for Christina.

  4. David Benjamin, $2,300, expert witness on liability.

  5. Expenses of Florida Trip, Nancy and family to examine new housing, $4,353.78.

  **c.** **Liens and Unpaid Medical and Funeral Bills**

7/2/07

A portion of the liens for medical services rendered to Veronica and Christina were paid to Neighborhood Health Plan from the state court settlement. The balance due of those liens will be paid in full from this settlement, $29,626.80 in connection with Christina's medical expenses and $8,675.26 in connection with Veronica's medical expenses.

The State of Connecticut has served a lien upon Nancy in her capacity as Administratrix of the Estate of Jose Santiago for $12,049 for reimbursement of public assistance to Aileen Lopez, the mother of Natasha Santiago, Jose's daughter. Since there was no evidence of Jose's conscious pain and suffering before his death, Nancy, as Administratrix of Jose's estate, does not believe that any funds recovered in this settlement are a part of his estate, and that consequently, the State of Connecticut can not properly assert a lien against any settlement proceeds.

The full $12,049 will be deducted from the settlement proceeds due to Natasha and held in escrow by Attorney Louis Farrah, who will, at no cost, attempt to convince the State of Connecticut of the soundness of Nancy's position, or, if appropriate, negotiate a compromise of the claim. Such amounts of the $12,049 to be withheld to which the State of Connecticut voluntarily relinquishes its claim or is ordered to have no claim, will thereupon promptly be remitted to Aileen Lopez, the mother of Natasha.

From Veronica's proceeds, $1,515 will be paid to Advanced Spine Center, Lawrence, MA and $889 to Essex Chiropractic, Lawrence, MA, for services each rendered to her in connection with injuries sustained in the accident.

From Awilda's proceeds, $9,059.75 will be paid to Farrah Funeral Home, Lawrence, MA for the cost of funeral and burial services and expenses advanced. From Jose's proceeds, $7,599 will be paid to Farrah Funeral Home, Lawrence, MA for the cost of funeral and burial services and expenses advanced.

7/2/07

### d.    Disbursements to Plaintiffs on Behalf of Minor Children

### Christina Santiago

Christina Santiago will receive, net of all expenses as described above, $1,249,792.73 which is comprised of $1,188,079.02 payable in connection with the injuries she suffered, and $61,713.71 as her share from the recovery resulting from the death of Jose Santiago. Plaintiffs, Co-Guardians, Nancy Rosario and Attorney Michael Miller desire that the entire net proceeds of $1,249,792.73 be placed in a special needs trust, and request that the Court order and direct them to a) create a Trust for benefit of Christina, pursuant to the provisions of 42 USC §1396p(d)(4) in the form attached as Exhibit G, and b) transfer to the Trustees of the Trust the net proceeds of the settlement for Christina's benefit. The co-Guardians and Attorney Ken Shulman, the proposed initial Trustee, believe it would be in the best interests of Christina if the proceeds of this settlement were held in a Trust that gives the Trustee the discretion and flexibility to make disbursements from the Trust for her benefit, and which also provides protection for the settlement proceeds in the event that Christina should ever be required to seek public assistance for her care. Such a Trust is specifically authorized by the provisions of 42 USC section 1396p (d)(4)(a). The Initial Trustee of the Special Needs Trusts will be Ken Shulman, Esq., of Day Pitney, One International Place, Boston, MA.[1]  A proposed order is attached as Exhibit H.

---

[1]

Attorney Shulman currently acts as Trustee of several special needs trusts. His practice includes a particular focus on estate planning and related issues for elders and for families who have disabled children. He recently co-authored Special needs Trust Administration manual, A Guide for Trustees, *People With Disabilities Press Series*, iUniverse (2005). He frequently speaks to consumer groups, professionals in the field and others interested in issues related to aging, disability, advocacy, financial planning and the preservation of government entitlements. Attorney Shulman previously served as a board member for several human service agencies including the Greater Boston ARC. He has also served as a consultant to the Massachusetts Office of Handicapped Affairs, the Massachusetts Disability Law Center and the Massachusetts Mental Health Legal Advisors Committee.

7/2/07

**Veronica Rosario**

Veronica Rosario will receive, net of all expenses as described above, $245,573.55, which is comprised of $183,859.84 payable in connection with the injuries she suffered, and $61,713.71 as her share from the recovery resulting from the death of Jose Santiago. Plaintiffs, Co-Guardians, Nancy Rosario and Attorney Michael Miller desire that the entire net proceeds of $245,573.55 be placed in trust, to be and request that the Court order and direct them to a) create a Trust for benefit of Veronica, in the form attached as Exhibit I, and b) transfer to the Trustees of the Trust the net proceeds of the settlement for Veronica's benefit. The co-Guardians and Attorney Ken Shulman, the proposed initial Trustee, believe it would be in the best interests of Veronica if the proceeds of this settlement were held in a Trust that gives the Trustee the discretion and flexibility to make disbursements from the Trust for her benefit. A proposed order is attached as Exhibit J.

**Natasha Santiago**

From the proceeds Natasha Santiago will receive $232,133.37 as her share from the recovery resulting from the death of Jose Santiago. As well, she may receive up to $12,049 of the funds to be held in escrow in connection with the disputed lien asserted by the State of Connecticut. Natasha's net proceeds will be paid over to her, over time, as part of a structured settlement, by way of an annuity, to be purchased as part of this settlement, comprising:    a)    payments of

---

Currently he is co-chairman of the Elder and Disability Planning Committee of the Boston Bar Association. He is a frequent participant in lawyer training sessions sponsored by the Massachusetts Continuing Legal Education organization and a frequent contributor to their publications, having co-chaired conferences on estate planning and preserving eligibility for government benefits for elderly and disable clients. He was the author of and featured speaker on Medicare and Medicaid Liens in personal Injury Cases at the MCLE Elder & Disability Law Conference (November 2000) and the author of the chapter entitled, Planning for the Disabled Child in *Estate Planning for the Aging or Incapacitated Client in Massachusetts*, MCLE (revised 2004).

7/02/07

$30,000 per year for five years, the first payment due on March 11, 2104, Natasha's eighteenth birthday, and subsequent $30,000 payments to be made on March 11, 2015, March 11, 2016, March 11, 2017, and March 11, 2018, **and, in addition**, b) monthly payments of approximately $925.59 per month, for Natasha's life, and guaranteed for forty years, the first payment to be made on March 11, 2014, and each subsequent payment due on the 11th day of each month thereafter.

## Conclusion

For the reasons set forth above, the parties respectfully request the Court approve this settlement.

Plaintiffs
By their attorney,

_____
ALBERT L. FARRAH, JR., ESQ.
One Washington Mall, 5th Floor
Boston, MA 02108
(617) 742-7766

RARE Hospitality International, Inc. d/b/a
Longhorn Steakhouse
By its attorney,

_____
Michael Gillis, Esq.
Gillis & Bikofsky, P.C.
1150 Walnut Street
Newton Highlands, MA 02461
(617) 244-4300

Date: July 13, 2007

7/2/07

# ALBERT L. FARRAH, JR.

### COUNSELOR AT LAW

One Washington Mall • Boston, MA 02108

(617) 742-7766 • Fax: (617) 742-2331

alf@afarrah.com
www.afarrah.com

July 16, 2007

Honorable Mark L. Wolf
c/o Dennis O'Leary, Courtroom Clerk
United States District Court
One Courthouse Way
Boston, MA 02210

RE:    Nancy Rosario, et al v. RARE Hospitality International, Inc. d/b/a Longhorn Steakhouse
       United Stated District Court Docket #05-CV-10617MLW

Dear Mr. Duffy:

I enclose for filing the Joint Petition for Approval of Settlement Pursuant to G.L. Ch. 231, §140C½ .  Please contact me if you have any questions.

Sincerely,

ALBERT L. FARRAH, JR.
pmp

MESSENGER
cc:    Michael Gillis, Esq. (via E-Mail Only)
       Neil Schnurbach, Esq. (via E-Mail Only)
       Louis Farrah (via E-Mail Only)

Santiago-RARE.ltr472

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NANCY ROSARIO, INDIVIDUALLY, AS       )
SHE IS THE ADMINISTRATRIX OF THE      )
ESTATE OF AWILDA SANTIAGO, ESSEX      )
PROBATE COURT DOCKET #03P-2499AD1 and )
AND AS SHE IS THE ADMINISTRATRIX OF   )
THE ESTATE OF JOSE SANTIAGO, BERLIN   )
(CONNECTICUT) PROBATE COURT,          )
CASE #03-0713 AND NANCY ROSARIO AND   )
MICHAEL MILLER, AS GUARDIANS OF       )
CHRISTINA SANTIAGO AND VERONICA       )
ROSARIO, ESSEX PROBATE COURT DOCKET   )    Civil Action #05-CV-10617MLW
#06P-0507GM                           )
       <u>Plaintiffs</u>                   )
                                      )
v.                                    )
                                      )
RARE HOSPITALITY INTERNATIONAL, INC.  )
d/b/a LONGHORN STEAKHOUSE             )
       <u>Defendant</u>                    )

**JOINT PETITION FOR APPROVAL OF SETTLEMENT**
**PURSUANT TO G.L. CH. 231, §140C½**

      This petition is filed by the plaintiffs, Nancy Rosario ("Nancy"), in her capacity as guardian

and mother and next of kin of Veronica Rosario and Christina Santiago, in her capacity as

Administratrix of the Estate of Awilda Santiago, Essex Probate Court #03P-2499AD1, and in her

capacity as Administratrix of the Estate of Jose Santiago, Berlin, Connecticut Probate Court Case

#03-0713 and Michael Miller, in his capacity as guardian of Veronica Rosario and Christina

Santiago and the defendant, RARE Hospitality International, Inc., d/b/a Longhorn Steakhouse

("RARE"), seeking a Court approved settlement pursuant to Massachusetts General Laws, c. 231,

§140C½.

This action arises out of a September 27, 2003 motor vehicle accident on Route 495 in Westford, Massachusetts, when a Dodge truck, operated by Jeffrey Southworth ("Southworth"), crashed into the rear of a Honda Accord driven by Jose Santiago. Riding with Jose in the Honda were his three daughters, Awilda Santiago, Christina Santiago and Veronica Rosario. Jose and Awilda died in the accident and Christina and Veronica were seriously injured in the crash.

Southworth was tried and convicted in Middlesex Superior Court of various charges arising out of the accident. On September 29, 2005, he was sentenced to significant prison sentences which he is currently serving.

As the result of the losses suffered in the accident, Plaintiff filed this "dram shop" action against RARE, the owner of the restaurant at which Southworth was drinking earlier in the evening, claiming that RARE served Southworth alcoholic beverages when it knew, or should have known, he was intoxicated, in violation of Massachusetts law. For its part, RARE has vigorously defended this action, contesting both liability and the extent and value of any injuries and damages.

## I.    THE PARTIES

a.    Plaintiffs

Nancy Rosario is parent and next friend of Veronica Rosario (age 15) and Christina Santiago (age 16). She is also Administratrix of the Estate of Awilda Santiago, Essex Probate Court #03P-2499AD1 and Administratrix of the Estate of Jose Santiago, Berlin (Connecticut) Probate Court #03-0713.

Michael Miller is an attorney practicing law in Lawrence, Massachusetts. He is currently a member in good standing of the bar of the Commonwealth of Massachusetts and of this Court.

b.    <u>Defendant</u>

RARE is a publicly traded corporation, organized under law, with a principal place of

business at 8215 Roswell Road, Building 200, Atlanta, Georgia.  It operates restaurants

throughout the eastern United States under the names Long Horn Steakhouse, Capital Grille and

Bugaboo Creek Steakhouse.

## II.    PLAINTIFFS' POSITION REGARDING INJURIES

a.    <u>Christina's Injuries</u>

Christina suffered a traumatic brain injury in the accident.  Post accident testing has

confirmed she now suffers from overall intellectual functioning in the low average to borderline

range with evidence of a clinically significant attention problem, characterized by inattention and

limitations in vigilance, problems in mental control, self-monitoring, and working memory.  She

has difficulties learning and remembering new information, particularly auditory information,

and limitations in vocabulary, with evidence of word-finding difficulties both to confrontation

and in spontaneous speech.   Christina, who was an average student prior to the accident, in

regular classes and otherwise healthy, is now a ninth grade student at Lawrence High School in

special education.

b.    <u>Veronica's Injuries</u>

Veronica suffered multiple trauma to the brain, face, chest, spine and abdomen, including

cerebral contusions, at T4-5 and multiple spleenic contusions with fracture of the anterior spleen.

In addition, Veronica suffered multiple body and corneal abrasions. Veronica was with Awilda

Santiago and Jose Santiago when they died.  She has suffered, and will continue to suffer,

emotional distress as a result of this accident and her loss, including various physical

Petition for Approval of Settlement
7/2/07

manifestations of her mental distress.

c.    Other Injuries and Claims

In addition to the claims of Christina and Veronica, claims were brought for Jose's death, Awilda's death and Nancy's injuries and damages.

## III.    RARE'S POSITION ON LIABILITY AND DAMAGES

RARE denies Southworth was intoxicated or showing visible signs of intoxication when it served him his last drink on September 26, 2003 and consequently denies it in any way was the legal cause of the damages suffered by Christina and Veronica.  Consistent with that position, RARE filed with this court a Motion for Summary Judgment which was scheduled to be heard on June 6, 2007, along with a Motion to Strike portions of the testimony of plaintiffs' expert toxicologist, David Benjamin.

It is also RARE's position, as expressed by its experts, that Christina made an excellent recovery from the brain injury she suffered, and that her present intellectual and cognitive levels are approximately the same as those that existed prior to the accident of September 26, 2003.

## IV.    MEDIATION

Several months ago, the parties agreed to attempt to resolve this dispute by means of mediation and in connection therewith, agreed upon a mediator, John Fitzgerald of the law firm of Cogavin & Waystack, One Center Plaza, Boston, MA.  Attorney Fitzgerald is a widely respected member of insurance defense bar, experienced in the defense of dram shop actions, a member of the board of directors of the Massachusetts Defense Lawyers Association and a fellow of the American College of Trial Lawyers.  Attorney Fitzgerald is a highly regarded mediator and coincidently, acted as the guardian ad litem for Christina and Veronica in

7/2/07

connection with an earlier settlement in the matter of <u>Nancy Rosario, et al</u> v. <u>Jeffrey Southworth, et al</u>, Middlesex Superior Court C.A. #03-4704L2, a state court civil action arising out of this automobile accident. In that capacity, he met Christina, Veronica and Nancy, their mother, and became familiar with the girls' injuries. Attorney Fitzgerald's role as guardian ad litem in the state court civil action was fully disclosed to RARE, which nonetheless joined with the plaintiffs in requesting Attorney Fitzgerald act as mediator in this case.

On May 16, 2007, at a mediation conducted by Attorney Fitzgerald that lasted until approximately 6:30 p.m., the parties settled all claims of all plaintiffs in this action for a total of $3.8 million. Participating in that mediation, and thus benefiting from Attorney Fitzgerald's perspectives and experience in similar matters, were Nancy and Attorney Miller, as well as counsel for the plaintiffs, Attorney Albert L. Farrah, Jr. and Louis J. Farrah, II.

## V.   TERMS AND CONDITIONS OF SETTLEMENT

Both Veronica and Christina, through Nancy and Attorney Miller, as co-guardians, have fully discussed with plaintiffs' counsel the issues surrounding liability and damages and the finality of this settlement. On their behalf, Nancy and Attorney Miller elect to avoid the risks and uncertainties of these claims. The net proceeds to claimants of the total settlement of $3,800,000 have been apportioned as follows:

1.   Christina Santiago's injuries: $1,188,079.02

2.   Veronica Rosario's injuries: $183,859.84

3.   Nancy Rosario's injuries:    $230,192.01

4.   Death of Awilda Santiago, no conscious pain and suffering: $374,687.99

5.   Death of Jose Santiago, no conscious pain and suffering:  $372,997.79

There was no evidence that either Awilda Santiago or Jose Santiago suffered consciously

5/24/07

before their deaths. Under the Massachusetts wrongful death statute, M.G. L., c. 229, sections 1 and 2, the administratrix brings this a death action on behalf of the next of kin of the decedent. In the case of Awilda, her mother is her next of kin. Jose's next of kin are his three daughters, Christina, Veronica and Natasha Santiago, his child with Aileen Lopez. Because of the evidence of Jose's close, ongoing relationship with Natasha, and of his less regular interactions with Christina and Veronica, funds recovered in connection with Jose's death will be distributed 2/3 to Natasha, 1/6 to Christina and 1/6 to Veronica.

A complete listing of all proposed disbursements of the $3.8 million settlement is attached as Exhibit A.

## VI.    PROPOSED DISTRIBUTION OF SETTLEMENT PROCEEDS

### a.    Legal Fees

i.    Executed contingent fee agreements with counsel call for payment of one-third of any gross amounts recovered and all expenses of litigation advanced by counsel prior to any distribution of net proceeds to plaintiffs. Legal fees of $1,266,666.66, which is 1/3 of $3,800,000, will be disbursed to Attorneys Albert L. Farrah, Jr. and Louis Farrah, II.

ii.    To be deducted from the net proceeds due to Natasha are:

a)    Legal fees, of $4,750 to attorney Thomas R. Lindberg, LLC, in connection with his role as Natasha's court appointed guardian ad litem, for services performed and to be performed, as described on his bill, attached as Exhibit C. Attorney Lindberg's fees have been apportioned entirely to Natasha's recovery; and

b)    Legal fees in the amount of $12,687 to attorney James Tarshi for services performed and to be performed, for the benefit of Natasha and her mother, as described on his bill, attached as Exhibit D. Attorney Tarshi's fees have been apportioned entirely to Natasha's

7/2/07

recovery.

    iii.    To be deducted from the net proceeds due to Christina and Veronica are:

    a)    Legal fees, of $20,675 to attorney Michael Miller, in connection with his role as co-guardian of Christina and Veronica for services performed and expenses incurred to date, and to be incurred in connection with a planned trip to Florida to investigate potential housing options for Nancy Rosario and her family. Attorney Miller's fees, as described in his bill attached as Exhibit E, have been apportioned ½ to Christina's recovery and ½ to Veronica's recovery; and

    b)    Legal fees in the amount of $4,500 to attorney Ken Shulman for creating an Irrevocable Special Needs Trust for Christina and a Trust for Veronica. Attorney Shulman's fees have been appropriated ½ to Christina's recovery and ½ to Veronica's recovery.

    **b.**    **<u>Reimbursement of Expenses Advanced to Date in this Litigation and Payment of Outstanding Expenses of Litigation</u>**

To date, plaintiffs' attorneys have incurred $59,876 in un-reimbursed expenses in prosecuting this litigation (see list attached as Exhibit F). From the settlement proceeds, the full amount of $59,843 will be repaid to counsel.

The following unpaid bills will also be paid from the settlement proceeds:

1.    Dr. Bruce Price, $16,250, expert witness for Christina;

2.    Ken Shulman, $1,660, expert witness for Christina;

3.    McLean Hospital, $1,950, diagnostic services for Christina.

4.    David Benjamin, $2,300, expert witness on liability.

5.    Expenses of Florida Trip, Nancy and family to examine new housing, $4,353.78.

    **c.**    **<u>Liens and Unpaid Medical and Funeral Bills</u>**

7/2/07

A portion of the liens for medical services rendered to Veronica and Christina were paid to Neighborhood Health Plan from the state court settlement. The balance due of those liens will be paid in full from this settlement, $29,626.80 in connection with Christina's medical expenses and $8,675.26 in connection with Veronica's medical expenses.

The State of Connecticut has served a lien upon Nancy in her capacity as Administratrix of the Estate of Jose Santiago for $12,049 for reimbursement of public assistance to Aileen Lopez, the mother of Natasha Santiago, Jose's daughter. Since there was no evidence of Jose's conscious pain and suffering before his death, Nancy, as Administratrix of Jose's estate, does not believe that any funds recovered in this settlement are a part of his estate, and that consequently, the State of Connecticut can not properly assert a lien against any settlement proceeds.

The full $12,049 will be deducted from the settlement proceeds due to Natasha and held in escrow by Attorney Louis Farrah, who will, at no cost, attempt to convince the State of Connecticut of the soundness of Nancy's position, or, if appropriate, negotiate a compromise of the claim. Such amounts of the $12,049 to be withheld to which the State of Connecticut voluntarily relinquishes its claim or is ordered to have no claim, will thereupon promptly be remitted to Aileen Lopez, the mother of Natasha.

From Veronica's proceeds, $1,515 will be paid to Advanced Spine Center, Lawrence, MA and $889 to Essex Chiropractic, Lawrence, MA, for services each rendered to her in connection with injuries sustained in the accident.

From Awilda's proceeds, $9,059.75 will be paid to Farrah Funeral Home, Lawrence, MA for the cost of funeral and burial services and expenses advanced. From Jose's proceeds, $7,599 will be paid to Farrah Funeral Home, Lawrence, MA for the cost of funeral and burial services and expenses advanced.

7/2/07

d.    **Disbursements to Plaintiffs on Behalf of Minor Children**

**Christina Santiago**

Christina Santiago will receive, net of all expenses as described above, $1,249,792.73 which is comprised of $1,188,079.02 payable in connection with the injuries she suffered, and $61,713.71 as her share from the recovery resulting from the death of Jose Santiago. Plaintiffs, Co-Guardians, Nancy Rosario and Attorney Michael Miller desire that the entire net proceeds of $1,249,792.73 be placed in a special needs trust, and request that the Court order and direct them to a) create a Trust for benefit of Christina, pursuant to the provisions of 42 USC §1396p(d)(4) in the form attached as Exhibit G, and b) transfer to the Trustees of the Trust the net proceeds of the settlement for Christina's benefit. The co-Guardians and Attorney Ken Shulman, the proposed initial Trustee, believe it would be in the best interests of Christina if the proceeds of this settlement were held in a Trust that gives the Trustee the discretion and flexibility to make disbursements from the Trust for her benefit, and which also provides protection for the settlement proceeds in the event that Christina should ever be required to seek public assistance for her care. Such a Trust is specifically authorized by the provisions of 42 USC section 1396p (d)(4)(a). The Initial Trustee of the Special Needs Trusts will be Ken Shulman, Esq., of Day Pitney, One International Place, Boston, MA.[1] A proposed order is attached as Exhibit H.

---

[1]    Attorney Shulman currently acts as Trustee of several special needs trusts. His practice includes a particular focus on estate planning and related issues for elders and for families who have disabled children. He recently co-authored Special needs Trust Administration manual, A Guide for Trustees, *People With Disabilities Press Series*, iUniverse (2005). He frequently speaks to consumer groups, professionals in the field and others interested in issues related to aging, disability, advocacy, financial planning and the preservation of government entitlements. Attorney Shulman previously served as a board member for several human service agencies including the Greater Boston ARC. He has also served as a consultant to the Massachusetts Office of Handicapped Affairs, the Massachusetts Disability Law Center and the Massachusetts Mental Health Legal Advisors Committee.

7/2/07

**Veronica Rosario**

Veronica Rosario will receive, net of all expenses as described above, $245,573.55, which is comprised of $183,859.84 payable in connection with the injuries she suffered, and $61,713.71 as her share from the recovery resulting from the death of Jose Santiago. Plaintiffs, Co-Guardians, Nancy Rosario and Attorney Michael Miller desire that the entire net proceeds of $245,573.55 be placed in trust, to be and request that the Court order and direct them to a) create a Trust for benefit of Veronica, in the form attached as Exhibit I, and b) transfer to the Trustees of the Trust the net proceeds of the settlement for Veronica's benefit. The co-Guardians and Attorney Ken Shulman, the proposed initial Trustee, believe it would be in the best interests of Veronica if the proceeds of this settlement were held in a Trust that gives the Trustee the discretion and flexibility to make disbursements from the Trust for her benefit. A proposed order is attached as Exhibit J.

**Natasha Santiago**

From the proceeds Natasha Santiago will receive $232,133.37 as her share from the recovery resulting from the death of Jose Santiago. As well, she may receive up to $12,049 of the funds to be held in escrow in connection with the disputed lien asserted by the State of Connecticut. Natasha's net proceeds will be paid over to her, over time, as part of a structured settlement, by way of an annuity, to be purchased as part of this settlement, comprising:    a)    payments of

---

Currently he is co-chairman of the Elder and Disability Planning Committee of the Boston Bar Association. He is a frequent participant in lawyer training sessions sponsored by the Massachusetts Continuing Legal Education organization and a frequent contributor to their publications, having co-chaired conferences on estate planning and preserving eligibility for government benefits for elderly and disable clients. He was the author of and featured speaker on Medicare and Medicaid Liens in personal Injury Cases at the MCLE Elder & Disability Law Conference (November 2000) and the author of the chapter entitled, Planning for the Disabled Child in *Estate Planning for the Aging or Incapacitated Client in Massachusetts*, MCLE (revised 2004).
7/02/07

$30,000 per year for five years, the first payment due on March 11, 2104, Natasha's eighteenth birthday, and subsequent $30,000 payments to be made on March 11, 2015, March 11, 2016, March 11, 2017, and March 11, 2018, **and, in addition**, b) monthly payments of approximately $925.59 per month, for Natasha's life, and guaranteed for forty years, the first payment to be made on March 11, 2014, and each subsequent payment due on the 11th day of each month thereafter.

## Conclusion

For the reasons set forth above, the parties respectfully request the Court approve this settlement.

Plaintiffs
By their attorney,

ALBERT L. FARRAH, JR., ESQ.
One Washington Mall, 5th Floor
Boston, MA 02108
(617) 742-7766

RARE Hospitality International, Inc. d/b/a
Longhorn Steakhouse
By its attorney,

Michael Gillis, Esq.
Gillis & Bikofsky, P.C.
1150 Walnut Street
Newton Highlands, MA 02461
(617) 244-4300

Date: July 13, 2007

7/2/07

Exhibit A

| | | | |
|---|---|---|---|
| 1 | 1 | ALF Fee | 633333.33 |
| 2 | | LJF Fee | 633333.33 |
| 3 | | ALF Exper | 45081.75 |
| 4 | | LJF Exp. | 14794.34 |
| 5 | | Price | 18750.00 |
| 6 | | Miller | 20675.00 |
| 7 | | Shulman | 6160.00 |
| 7a | | McLean | 1950.00 |
| 7b | | Florida | 4353.78 |
| 7c | | Essex | 889.00 |
| 7d | | Advanced | 1103.00 |
| 7e | | Fun. Awil. | 9509.75 |
| 7f | | Fun. Jose | 7599.00 |
| 7g | | Benjamin | 2300.00 |
| 7h | | Lindberg | 4750.00 |
| 7i | | Tarshi | 12687 00 |
| 8 | | NHP V | 8675.26 |
| 9 | | NHP C | 29626.80 |
| 10 | | Conn. N | 12049.00 |
| 11 | | Christina | 1188079.02 |
| 12 | | Veronica | 183859.84 |
| 13 | | Nancy | 230192.01 |
| 14 | | Awilda | 374687.99 |
| 15 | | Christina | 61713.71 |
| 16 | | Veronica | 61713.71 |
| 17 | | Natasha | 232133.37 |
| | | Total | 3800000.00 |

## EXHIBIT B

BLANK

EXHIBIT C

# LAW OFFICE OF THOMAS R. LINDBERG, LLC

Attorneys and Counselors-at-Law
**11 Vista Way**
Bloomfield, CT 06002
Telephone (860) 656-7476
FAX (860) 656-6907
E-Mail: lindbergtrlaw@comcast.net

## Statement of Fees

June 11, 2007

Nancy Rosario
c/o Louis Farrah, Esq.
137 Lawrence Street
Lawrence, MA 01841

For services rendered as Guardian of the Estate
of Natasha Santiago, 2003 to date, including:
initial and subsequent conferences and discus-
sions with Judge and personnel of Berlin
(Connecticut) Probate Court, review of Probate
Court file, all documentation, applications for
Probate, review of litigation documentation
and personal injury/wrongful death litigation,
telephone conferences and correspondence with
Mrs. Nancy Rosario, Atty. James Tarshi, Atty.
Albert Farrah, Atty. Louis Farrah, et al,
interim reports, interim inquiries as to status,
Inventory, Accounting, Final Report to Court,
Request for Discharge as fiduciary, etc/

**TOTAL DUE**                          **$4,750.00**

# TARSHI  LAW  OFFICE

510 ESSEX STREET
LAWRENCE, MA 01840

Telephone (978)  686-1821
686-3660
Facsimile (978)  688-0290

## STATEMENT

Nancy Rosario
Administrator of the Estate of Jose Santiago
c/o Albert L. Farrah, Jr., Esq.
One Washington Mall
Boston, MA 02108

June 15, 2007

Legal representation for services rendered in the claim of Aileen Lopez, mother and next friend of Natasha Santiago v. Estate of Jose Santiago from December, 2003 to present.

- Interview with Aileen Lopez
- Obtaining police report
- Correspondence and discussions with various insurers and their attorneys
- Filing claims with insurers
- Filing and proving claim against the Estate
- Review of litigation documents and personal injury wrongful death litigation
- Telephone conferences and correspondence with Attorney Lindberg, Attorneys Louis and Albert Farrah
- Proving that Natasha Santiago was in fact the daughter of Jose Santiago
- Meeting at Attorney Farrah's office in Boston, MA
- Review of settlement documents

**TOTAL DUE:**    (inclusive of expenses)                    **$12,687.00**

EXHIBIT E

# Michael P. Miller

*Attorney-at-Law*
90 South Bowdoin Street
Lawrence, Massachusetts 01843
Telephone:      (978) 258-5970
Email: mpmesquire@comcast.net

June 16, 2007

Albert L. Farrah, Jr.
Counselor-at-Law
One Washington Mall
Boston, MA 02108

**RE:    Statement for Services Rendered:**
**Guardianship of Christina Santiago and Veronica Rosario**

Dear Attorney Farrah:

The following is a statement for service rendered in connection with the above referenced Guardianship to date:

| Date: | Activity: | Time: |
|---|---|---|
| 7/7/06 | Review of Christina's Medical and Mental Health Records / Reports. | 4.0hrs |
| 7/7/06 | Review of Dr. Hebben's report dated 1/22/05 Re: Christina | 1.25hrs |
| 7/9/06 | Consultation with Terry Kelley of Lawrence Public Schools Re: District Special Education practices | 1.0hr |
| 7/19/06 | Meeting with Nancy and Veronica Rosario to open accounts At Metro Credit Union for Christina and Veronica | 1.5hrs |
| 8/8/06 | Meeting with Atty. Louis Farrah Re: meeting w/ Dr. Hebben | 1.0hr |
| 8/9/06 | Meeting with Dr. Hebben and Attys. Farrah Re: Christina | 3.5hrs |
| 8/18/06 | MRI: McLean Hospital: Christina | 3.5hrs |
| 8/19/06 | House visit/check on Christina and Veronica | .75hr |
| 8/24/06 | Review of Lawrence Public Schools Educational Assessment Plan for Christina | 1.0hr |
| 8/29/06 | Review of Dr. Hsu's Findings of Christina's MRI | .5hr |
| 9/2/06 | Review of Dr. Price's 8/29/06 report Re: Christina | .75hr |
| 9/6/06 | Review of Dr. Price's 8/11/06 report Re: Veronica | .5hr |
| 9/8/06 | Review of Special Education Appeals Material forwarded by Atty. Louis Farrah | 2.0hrs |
| 9/9/06 | Meeting with Atty. Farrah Re: Christina's educational needs | 1.5hrs |

June 16, 2007
Santiago / Rosario Guardianship
Billing Statement
Page 2.

| Date | Description | Hours |
|------|-------------|-------|
| 9/11/06 | MRI: McLean Hospital: Christina | 3.0hrs |
| 9/15/06 | Meeting with Dr. Price and Christina: McLean Hospital | 3.5hrs |
| 9/16/06 | House visit/check on Christina and Veronica | .75hr |
| 10/3/06 | Consultation with Terry Kelley Re: Special Education services for Christina | 2.0hrs |
| 10/14/06 | Review of Christina's school records in preparation for meeting with Assistant Superintendent Mary Lou Bergeron | 3.0hrs |
| 10/18/06 | House visit/check on Christina and Veronica | .5hr |
| 10/23/06 | Meeting with Attys. Farrah and Mary Lou Bergeron Re: Christina's special educational needs | 1.5hrs |
| 10/24/06 | Review of Christina's 04-05, 05-06 IEP in preparation of Special Education Team meeting for Christina at L.H.S. | 1.75hrs |
| 10/25/06 | Meeting with Atty. Louis Farrah in preparation of Special Ed. meeting for Christina. | 2.0hrs |
| 10/26/06 | Meeting with Christina's Special Ed. Team at L.H.S. and Atty. Louis Farrah | 2.0hrs |
| 10/26/06 | Post team meeting with Atty. Louis Farrah Re: future services for Christina | 1.0hr |
| 11/16/06 | Review of revised IEP for Christina with Atty. Louis Farrah | 1.0hr |
| 11/11/06 | House visit/check on Christina and Veronica | .5hr |
| 12/12/06 | Meeting of Special Education Team at L.H.S.: Re-evaluation rescheduled due to Christina's unavailability | 1.0hr |
| 12/16/06 | Meeting with Atty. Farrah in preparation of Christina's Special Ed. Team meeting | 1.5hrs |
| 12/18/06 | Meeting with Christina's Special Ed. Team at L.H.S. and Atty. Louis Farrah | 1.5hrs |
| 12/18/06 | Post team meeting with Atty. Louis Farrah | .75hr |
| 2/20/07 | Review of proposed Amended IEP for Christina | .75hr |
| 2/22/07 | Meeting with Atty. Louis Farrah Re: Amended IEP for Christina | 1.25hrs |
| 2/24/07 | Meeting with Atty. Louis Farrah and Nancy at house Re: rental television for the kids.  Terminated the rental contract and purchased a television for Christina and Veronica | 5.0hrs |
| 4/11/07 | Accompanied Christina to South Bay for Counseling session | 1.5hrs |
| 4/25/07 | Accompanied Christina to South Bay for Counseling session | 2.0hrs |
| 5/1/07 | Meeting with Atty. Farrah and Veronica Re: school | .75hr |
| 5/4/07 | Meeting with Attys. Farrah in preparation of mediation | 3.0hrs |
| 5/11/07 | Meeting with Atty. Louis Farrah re: Mediation | 1.0hr |

June 16, 2007

Santiago / Rosario Guardianship
Billing Statement
Page 3.

| | | |
|---|---|---|
| 5/13/07 | Review of correspondence from Atty. Albert Farrah | |
| | Re: Mediation and Defendant's Motion For Summary Judgment | 2.0hrs |
| 5/16/07 | Mediation:     Atty. John Fitzgerald: Cogavin and Waystack | 11.5hrs |
| 5/21/07 | Teleconference with Attys. Farrah and, Atty. Ken Shulman | |
| | Re:  manner of distribution of settlement proceeds | 1.5hrs |
| 5/23/07 | Meeting with Atty. Louis Farrah Re: Christina's accounts | 1.5hrs |
| 5/24/07 | Meeting with Nilsa Martinez of Metro Credit Union Re: | |
| | Christina's Certificate of Deposit and Checking Account | 1.25hrs |
| 5/25/07 | Letter to Metro Credit Union Re: Christina's Accounts | .5hrs |
| 5/29/07 | Review of proposed Trust and Structured Settlement(s) | |
| | Re: Christina's and Veronica's settlement proceeds | 2.0hrs |
| 5/30/07 | Consultation with Atty. Louis Farrah Re: settlement proceeds | 1.0hr |

**Total Hours:  83.0hrs**

Hourly Rate:          $225.00 per hour
Fee for services:     83 hours x $225.00 = $18,675.00

6/8/07-
6/10/07       Trip to Orlando, Florida to secure housing and school for Veronica and
              Christina:

**Flat Fee:          $2,000.00**

**Balance payable: $20,675.00**

Thank you for providing me with the opportunity to serve you.

Sincerely,

Michael P. Miller

MPM/

CC:     File

Exhibit F

**Expenses Paid to Date**

Updated:  June 6, 2007

| Date | Payee | Amount |
|------|-------|--------|
| | Lloyd Price | 3050 |
| *10/08/03* | Essex Probate Court | 235 |
| *12/08/04* | Fed Ex | 18.54 |
| *04/05/06* | Birth Certificate | 18 |
| *04/06/06* | Death Certificates | 20 |
| *04/11/06* | Birth Certificate | 5 |
| *05/03/06* | Linda Rattigan | 20 |
| *05/11/06* | Linda Rattigan | 57 |
| 06/13/06 | Breakaway Messenger | 23 |
| 06/27/06 | Breakaway Messenger | 18 |
| 07/19/06 | Linda Rattigan | 174 |
| 07/20/06 | Social Security Adminis | 64 |
| *07/24/06* | Housing Court | 16 |
| 07/26/06 | Universata, Inc. (medica | 70 |
| 07/31/06 | Lloyd Price, M.D. | 2310 |
| 08/02/06 | Shea Court Reporting (( | 156 |
| 08/07/06 | Nancy Hebben, PhD | 1800 |
| 08/07/06 | Carol P. Walker | 2580 |
| 08/07/06 | Shea Court Reporting (` | 154 |
| 08/07/06 | GLFHC | 15 |
| | Medical Records Assoc | 60 |
| 08/07/06 | Medical Records Assoc | 78 |
| 08/07/06 | Medical Records Assoc | 28 |
| 08/07/06 | Medical Records Assoc | 31 |
| 08/07/06 | Shea Court Reporting (، | 250 |
| 08/07/06 | Shea Court Reporting (I | 325 |
| 08/07/06 | Shea Court Reporting (‹ | 771 |
| 08/07/06 | Medical Records Assoc | 15 |
| 08/11/06 | Gabriel & Sweeney | 654 |
| 08/17/06 | QuickServ | 364 |
| *08/22/06* | Vocational Consulting | 3500 |
| 08/24/06 | National Video Reporter | 491 |
| 08/31/06 | Medical Records (Nanc | 192 |
| 09/01/06 | Caritas Holy Family (Na | 26 |
| *09/01/06* | InstaWares | 314 |
| 09/05/06 | Linda Rattigan | 30 |
| 09/14/06 | Pamela Peck (expenses | 14 |
| 09/14/06 | FedEx | 22 |
| 09/15/06 | Copy Cop Accounting | 209 |
| 09/18/06 | Lloyd Price, M.D. | 2165 |
| 09/19/06 | Valed Video (Boullaine | 713 |
| 09/29/06 | FedEx | 25 |
| 09/28/06 | Gabriel & Sweeney (NR | 629 |
| 09/29/06 | FedEx | 29 |
| 10/02/06 | Copy Cop Accounting | 42 |
| 10/02/06 | Gabriel & Sweeney (CS | 781 |
| 10/02/06 | Shea Court Reporting (( | 29 |
| 10/03/06 | National Video Reporter | 474 |
| 10/03/06 | National Video Reporter | 431 |
| 10/03/06 | FedEx | 20 |
| 10/05/06 | National Video Reporter | 162 |
| 10/06/06 | Lloyd Price, M.D. | 1733 |
| 10/10/06 | FedEx | 15 |
| 10/16/06 | Shea Court Reporting | 150 |
| 10/16/06 | InterCity Testing & Cons | 2750 |

| Date | Description | Amount |
|------|-------------|--------|
| 10/16/06 | FedEx | 21 |
| 10/19/06 | Dram Shoppe Consulta | 2354 |
| 10/24/06 | FedEx | 24 |
| 10/26/06 | FedEx | 21 |
| 10/26/06 | FedEx | 25 |
| 10/31/06 | Short Stop Photo (MSP | 95 |
| 11/01/06 | Short Stop Photo (MSP | 32 |
| 11/03/06 | Short Stop Photo (MSP | 58 |
| 11/15/06 | InterCity Testing & Cons | 2259 |
| 11/16/06 | Nancy Hebben, Ph.D. | 1850 |
| 11/28/06 | Carol P. Walker | 3082 |
| 12/14/06 | Business Decision Serv | 2950 |
| 01/19/07 | David Benjamin, Ph.D. | 650 |
| 02/02/07 | USGround | 15 |
| 02/12/07 | Business Decision Serv | 2950 |
| 02/15/07 | Medical Records Assoc | 27 |
| 02/16/07 | Reading PA Trip | 201 |
| 02/22/07 | Federal Express | 45 |
| 02/28/07 | USGround | 21 |
| 03/01/07 | Gabriel & Sweeney (DB | 425 |
| 03/02/07 | Caritas Holy Family (Na | 24 |
| 03/05/07 | National Video Reporter | 370 |
| 03/06/07 | ABCC | 40 |
| 03/13/07 | GLFHC | 17 |
| 03/13/07 | National Video Reporter | 491 |
| 03/13/07 | Gabriel & Sweeney (DB | 985 |
| 03/19/07 | Copy Cop Accounting | 30 |
| 03/22/07 | Pamela Peck (expenses | 6 |
| 04/06/07 | David Benjamin, Ph.D. | 1000 |
| 05/09/07 | Cogavin & Waystack | 4000 |
| *05/11/07* | Tidewater Inn | 413 |
| *05/11/07* | Papa Ginos | 27 |
| *05/12/07* | Uno-Chicago | 81 |
| *05/12/07* | Ocean State | 81 |
| *05/15/07* | Marshalls | 177 |
| *05/16/07* | Parking | 32 |
| *05/16/07* | Food | 34 |
| | | |
| 05/09/07 | USGround | 5 |
| 05/16/07 | Kinko's | 162 |
| 05/21/07 | Mike Marcantonio | 3454 |
| 05/21/07 | Gabriel & Sweeney (MM | 1102 |
| 05/21/07 | Gabriel & Sweeney (MM | 636 |
| 05/21/07 | Nancy Hebben, Ph.D. | 650 |
| 05/21/07 | Lloyd Price, M.D. | 600 |
| 06/04/07 | Parking | 33 |

TOTAL PAID TO DATE          59876

# EXHIBIT G

## THE CHRISTINA SANTIAGO

**IRREVOCABLE SPECIAL NEEDS TRUST**

**Established By Order**

**Of**

**The United States District Court**

**for the**

**District of Massachusetts**

**with**

**Ken W. Shulman**

**As Trustee**

# DRAFT DOCUMENT

**Day Pitney LLP**

**Boston, Massachusetts**

## THE CHRISTINA SANTIAGO
## IRREVOCABLE SPECIAL NEEDS TRUST

THIS INTER VIVOS IRREVOCABLE TRUST, is established as of _____ ___, 2007, by Order of The United States District Court for the District of Massachusetts for the benefit of CHRISTINA SANTIAGO, a resident of Lawrence, Massachusetts.  KEN W. SHULMAN of Boston, Massachusetts, as initial Trustee and his successors in trust (collectively the "Trustees"), agree to act as Trustees upon the terms and conditions set forth herein.  NANCY ROSARIO, the mother of CHRISTINA SANTIAGO and MICHAEL MILLER, the guardian of CHRISTINA SANTIAGO (Essex Probate and Family Court Docket Number 06P050TGM), assent to and join in the creation of this Trust.

### W I T N E S S E T H:

By Order of United States District Court for the District of Massachusetts, Docket Number 05-CV-10617MLW, KEN W. SHULMAN of Boston, Massachusetts agrees to act as Trustee of this discretionary trust and accepts, delivers and assigns to the Trustees the property specified in Schedule A to this Agreement.  NANCY ROSARIO, the mother of CHRISTINA SANTIAGO and MICHAEL MILLER, the guardian of CHRISTINA SANTIAGO, hereby assent to and join in the creation of this Trust.  The Trustees hereby acknowledge receipt of such property and agree to hold, administer and distribute all of the aforesaid property, together with any property added to the trust by any person, including the beneficiary, and accepted by the Trustees, as follows:

## Article I.  Material and Primary Purpose of Trust.

**A.**    A material and primary purpose of this discretionary trust is to provide for the unmet needs and sole benefit of CHRISTINA SANTIAGO, who is disabled, as said term is defined and used in section 1614(a)(3) of the Social Security Act, 42 United States Code section 1382c(a)(3), taking into account the benefits of cash, medical and/or other forms of assistance that CHRISTINA is eligible to receive from all sources, including without limitation those received as a result of CHRISTINA's disability, handicap, age or needs, from (a) local, state and/or federal governments or governmental agencies, or (b) any private insurance company or other organization that may provide payments, services, or assistance to disabled, handicapped, or needy persons (all such benefits of assistance hereinafter referred to as "benefits").  To serve this purpose, in the event that CHRISTINA shall receive such benefits, trust income and principal shall be used to the maximum extent possible to supplement, not reduce or replace, such benefits, consistent with CHRISTINA's best interests and with the terms and provisions of this Agreement.

**B.**    This inter vivos trust is intended to comply, if necessary with the pertinent provisions of the Omnibus Budget Reconciliation Act of 1993, as said Act amends the Social Security Act, which authorizes the creation of an inter vivos trust for the benefit of a disabled individual, the creation and funding of which trust shall not, as provided in 42 United States Code section 1396p(d)(4), cause such individual to be or become ineligible for Medicaid and SSI and, transfers to which, shall not, as provided under 42 United States Code section 1396p(c)(2)(B), subject the transferor to a period of ineligibility from such assistance.

## Article II.  Distributions of Income and Principal.

During the term of the trust, the following provisions shall apply:

A.    After deducting all proper charges and expenses, the Trustees shall pay or apply, for the sole benefit of CHRISTINA, all or any part of the net income and/or principal of the trust as the Trustees, in such Trustees' sole, absolute and uncontrolled discretion, shall deem desirable for the material and primary purpose set forth in Article I.  In the event that CHRISTINA or CHRISTINA's legal representative, acting on CHRISTINA's behalf, shall apply for and/or receive benefits provided by insurance or federal, state, local or any other assistance programs or any federal or state income maintenance programs existing from time to time, the Trustees' payments for CHRISTINA shall be limited so as to supplement, not reduce or replace, such benefits as CHRISTINA is otherwise eligible to receive.  Notwithstanding the foregoing the Trustees may make a distribution in an amount that could preclude or reduce CHRISTINA's receipt of certain benefits if the Trustees determine, in the Trustees' sole, absolute and uncontrolled discretion, that CHRISTINA's future well-being would not be materially prejudiced by not receiving such  benefits.  Any undistributed net income shall be accumulated and added to trust principal periodically (but not less frequently than annually).

B.    The Trustees may (but shall not be required to) consult with any guardian, conservator or representative payee of CHRISTINA and any of the persons, friends, relatives, or agencies that serve CHRISTINA, in determining the amount of net income and/or principal, if any, to be paid for the benefit of CHRISTINA or to be accumulated or otherwise distributed in accordance with section A of this Article.  The final determination regarding payments, if any, from the trust income and principal, shall rest in the sole, absolute and uncontrolled discretion of

513835991

3

the Trustees, to the extent permitted by law and in accordance with the provisions and purposes
of this Agreement.

C.    Payment of trust net income and principal by the Trustees as authorized hereunder
may be made in one or more of the following ways:

1.    by payment to any legally-appointed guardian or conservator of
CHRISTINA;

2.    by payment to any person deemed by the Trustees to have assumed
responsibility for the regular payment of CHRISTINA's living expenses; and/or

3.    by payment directly to the seller or provider of any property, goods, or
services to or for the benefit of CHRISTINA.

4.    by any other manner the Trustees determine to be appropriate in their sole
and absolute discretion.

D.    Notwithstanding any other provision of this Agreement, the Trustees shall not use
trust income or principal to pay for food, shelter, or health care for CHRISTINA when, in the
event of CHRISTINA's application, benefits (as such term is defined in Article I) or other
resources are otherwise determined to be available therefore; provided, however, that the
Trustees, in the Trustees' sole, absolute and uncontrolled discretion, may supplement the
services and needs for which such benefits or other services or resources are available to
CHRISTINA, or when such benefits or resources are inadequate for CHRISTINA as the Trustees
determine in their sole, absolute and uncontrolled discretion, including purchasing a residence
for CHRISTINA to occupy.  However, the Trustees shall have no obligation to apply for such

benefits on CHRISTINA's behalf or to otherwise ensure CHRISTINA's eligibility for such
benefits.

E.    It is expected that the Trustees will cooperate fully with the person(s) having
direct responsibility for CHRISTINA, in meeting CHRISTINA's needs, in encouraging
CHRISTINA's happiness, independence, and self-reliance, and in every way fostering
CHRISTINA's development to the fullest extent possible, although the exact nature and terms of
such cooperation rest in the discretion of the Trustees.

F.    Notwithstanding the foregoing, no distribution shall be ordered or made in
contravention of the material and primary purpose of this trust, as set forth in Article I. This
provision is intended to negate the discretion granted to any court (such as that provided by New
York Estates, Powers and Trusts Law section 7-1.6 or any similar state or federal law) to reform
the trust to require the Trustees to provide for CHRISTINA's general support.

### Article III.    Termination of Trust.

A.    Upon CHRISTINA's death, subject to the provisions of this Article, this trust
shall terminate and, if and only if, the so-called "pay back" requirement described herein was or
is required for CHRISTINA to have received benefits from the Supplemental Security Income
Program (SSI) [42 USC section 1381 et. seq. (Title XVI)] or the Medicaid program, the Trustees
shall pay from the trust income and principal then remaining, to each state, including the
Commonwealth of Massachusetts, from which CHRISTINA has received Medicaid, an amount
equal to the total Medicaid paid on CHRISTINA's behalf during CHRISTINA's lifetime
pursuant to such state's plan, to the extent that such amount has not previously been paid to such
state (the "payback" requirement). If CHRISTINA has received such Medicaid from more than

one state and if upon termination of this trust the remaining income and principal is insufficient

to satisfy the foregoing payment requirement in full, then payment shall be made to each such

state pro rata based on the percentage that each such state's Medicaid payments to, or on behalf

of, CHRISTINA represent to the total of such Medicaid received by CHRISTINA during

CHRISTINA's lifetime.  At the time of creation and initial funding of this Trust, it is not

anticipated that the "payback" requirement would have been necessary for CHRISTINA to

become eligible for the SSI Program because it is anticipated that she will not apply (or reapply)

for SSI until three (3) years have expired since the creation and funding of this Trust with

CHRISTINA's funds.

      **B.**      Subject to the satisfaction by the Trustees of the payment obligations set forth in

the preceding section, the then remaining trust property, if any, shall be distributed in accordance

with the exercise of a power of appointment contained in CHRISTINA's Will duly admitted to

probate and making specific reference to this provision, or, if none, to CHRISTINA's

descendants, per stirpes, and if none, to CHRISTINA's mother, NANCY ROSARIO's then

living descendants, per stirpes.

      **C.**      If at any time after the CHRISTINA'S death any property becomes distributable

to a descendant of CHRISTINA or her mother, or all or any part of the income or principal of

any trust created hereunder becomes distributable outright, other than pursuant to an effective

exercise of a power of appointment created herein, to any person who has not reached the age of

30 (the "beneficiary"), the Trustee is authorized to distribute all or any part of such property to

the beneficiary directly or, if the beneficiary is a minor, to the beneficiary's parent or guardian or

to any other person or in any other manner deemed to be for the beneficiary's benefit.  The

Trustee may also distribute all or any part of such property to a custodian for the beneficiary under a gifts to minors act of any state, including a custodian designated by the Trustee. The written receipt of the person receiving such distribution shall fully and completely discharge the Trustee with respect to such distribution.

The Trustee is also authorized to retain any income or principal of any trust distributable to a person under the age of 30, and to hold any property distributable to a descendant of the CHRISTINA or her mother, in a separate trust for the beneficiary's benefit until the beneficiary has reached the age of 30 or until the Trustee shall earlier determine that the property should be distributed, at which time the trust shall terminate. The Trustee shall pay to or for the benefit of the beneficiary so much of the net income and principal of the trust as the Trustee shall determine is necessary or desirable for the beneficiary's health, education and support in reasonable comfort until the trust shall terminate, at which time all of the trust property shall be distributed to the beneficiary. Any net income not so expended shall be accumulated and added to principal. If the beneficiary dies before the trust shall terminate, the remaining income and principal of the trust shall be distributed to the estate of the beneficiary.

### Article IV.  Appointment of Trustees.

A.    **Succession of Trustees**.

1.    Any Trustee of any trust created hereunder may resign at any time by giving at least thirty days' written notice of that intention, delivered personally or by certified mail, to CHRISTINA or her legal representative or, if she is not then living, to the beneficiaries to whom the income of such trust may then be paid who are nearest of kin to the CHRISTINA.

2.    The Trustee of any trust created hereunder shall have the power to appoint an individual or institution to act as co-Trustee. Any co-Trustee so appointed may be removed at any time by the Trustee (not including the co-Trustee so appointed) or as otherwise provided in this Agreement and may, but need not, be replaced. A co-Trustee so removed shall promptly deliver the property of such trust, together with the trust records, to the remaining Trustee.

3.    The last acting Trustee named or appointed as provided herein shall have the power to designate a successor Trustee by an instrument signed and acknowledged by such Trustee. Any such designation may be revoked prior to its taking effect, in which case a new designation may be made in like manner.

4.    If any Trustee of any trust created hereunder resigns, is removed or is at any time otherwise unable to act as Trustee and no successor able and willing to serve is designated herein or appointed pursuant to paragraph (2) preceding to serve in that event, LOUIS FARRAH of Lawrence, Massachusetts, shall appoint a successor Trustee that may be himself and if he is not living, the law firm of Day Pitney LLP in Boston, Massachusetts shall appoint a successor Trustee, which shall be an institution which regularly serves as a fiduciary of trusts or an individual who regularly serves as a fiduciary of trusts for the benefit of persons other than members of such individual's family. Such power shall be exercised by sending written notice to the successor Trustee. All references to Day Pitney LLP shall include its successors and assigns.

5.    Any appointment of a co-Trustee or successor Trustee hereunder shall be made by sending written notice to the co-Trustee or successor Trustee. Any co-Trustee or successor Trustee shall deliver personally or by certified mail a written and acknowledged acceptance of such trust to the persons then entitled to notice of the resignation of a Trustee of

51383599 1

8

such trust and to any other Trustee of such trust then serving. Every Trustee and successor Trustee shall have all the powers, immunities and discretions conferred upon the original Trustee. No successor Trustee shall be liable or responsible for any acts or defaults of any predecessor Trustee in any way or for any loss or expense from or occasioned by anything done or neglected to be done by any predecessor Trustee.

6.    The co-Trustees at any time in office may at any time and from time to time agree among themselves, by an instrument in writing signed by them, that any one or more or all of their powers, duties and authorities hereunder, discretionary or otherwise, may be exercised by any of them or by a certain one of them. Any such instrument of delegation shall be effective for the period specified therein or until earlier revoked by a further instrument in writing signed and delivered by any co-Trustee to the others. Any person dealing with the co-Trustees shall be entitled to rely upon any such instrument of delegation until such person has actual notice of the termination thereof.

7.    Subject to all other provisions of this Article with respect to the appointment of a successor Trustee, if any corporate Trustee or successor Trustee should merge, reorganize or consolidate with another corporation having trust powers, or otherwise transfer substantially all of its trust business to another corporation having trust powers, the corporation which results from such merger, reorganization or consolidation or which succeeds to such trust business shall serve as Trustee in place of, and with all of the rights, duties, obligations, liabilities, powers, discretions, privileges and immunities of, the corporate Trustee being replaced.

8.    Any successor Trustee shall have all of the powers herein conferred, and all of the liabilities herein imposed, on the Trustee he, she or it is succeeding.

9.    No appointment of a Trustee, whether corporate or individual, shall be effective until it is accepted, in writing, by the appointee, and may be revoked prior to acceptance and approval.  Title to the entire trust property shall vest automatically in any successor and/or additional Trustee without the necessity of any conveyance.

10.    A determination that any individual fiduciary acting hereunder is incapable shall be deemed a resignation by that individual fiduciary as of the date of the determination.  For purposes of this Article, an individual fiduciary shall be deemed incapable effective upon the first to occur of (1) appointment of a guardian or conservator of his or her person and/or estate by a court of competent jurisdiction; or (2) certification by the individual's primary physician (or, in the alternative, two physicians) that such person is unable to care for his or her person and/or to manage his or her property.

11.    Subject to all other provisions of this Article with respect to the appointment of successor Trustee, if any corporate Trustee or successor Trustee should merge, reorganize or consolidate with another corporation having trust powers, or otherwise transfer substantially all of its trust business to another corporation having trust powers, the corporation which results from such merger, reorganization or consolidation or which succeeds to such trust business shall serve as Trustee in place and with all of the powers, discretions and immunities of the corporate Trustee being replaced.

## Article V.  Administrative Provisions.

**A.**    **Irrevocable Trust.**

     **1.**    This Agreement and any trust created hereunder shall be irrevocable and, except as otherwise specifically provided in this Agreement, shall not be subject to alteration or amendment in any respect.

     **2.**    To the extent permitted by law, subject to the following subsection 3 of this Section A, the Trustees shall be entitled to amend this Agreement solely to the extent necessary to establish and/or maintain CHRISTINA's eligibility for Medicaid and SSI and/or to establish and/or maintain CHRISTINA's eligibility for non-Medicaid and/or non-SSI benefits or programs that provide assistance to disabled persons, and, to the extent allowed by law, to maintain the immunity of the trust principal from the claims of any and all creditors of CHRISTINA during CHRISTINA's lifetime.  Prior to making any amendment hereunder the Trustees shall provide notice thereof to each person or entity entitled to receive a copy of the Trustees' annual accountings.

     **3.**    Notwithstanding any provision of this Agreement to the contrary, the Trustees shall have no authority to amend this Agreement so as to limit or extinguish the rights of the  Commonwealth of Massachusetts (or any other state) to receive upon the termination of this trust payment of the total amount of Medicaid paid on behalf of CHRISTINA.

**B.**    **Additions to Trust.**  Any person may add property to the trust by lifetime gift or by transfer taking effect at death; provided, however, that such property is acceptable to the Trustees, and provided, further, that at such time CHRISTINA is then under the age of sixty-five

(65) years and disabled, as said term is defined and used in section 1614(a)(3) of the Social

Security Act, 42 United States Code section 1382c(a)(3).

        **C.**      **Income Tax Status of Trust.**  This trust is a grantor trust for federal and state

income tax purposes and accordingly all trust income shall be taxable to CHRISTINA.

CHRISTINA, or, if CHRISTINA is under a legal disability, CHRISTINA's legal representative,

shall have the power at any time, exercisable individually in a nonfiduciary capacity and without

the approval or consent of any person or entity in a fiduciary capacity, to substitute any property

of the trust with other property of an equivalent value.  This power may be released by

CHRISTINA or, if CHRISTINA is under a legal disability, by CHRISTINA's legal

representative, at any time by filing an acknowledged instrument of release with the Trustees.

        **D.**      **Discretionary Decisions Limited to Independent Trustee.**  Notwithstanding

any other provision of this Agreement or applicable law to the contrary:

        **1.**      No Trustee who is not an Independent Trustee shall participate in any

decision regarding (i) any discretionary accumulation, payment, application or allocation of

income or principal; (ii) the termination of the trust; (iii) the determination whether a beneficiary

is disabled; or (iv) the exercise of discretion to allocate receipts or expenses between principal

and income.  Furthermore, a Trustee who is not an Independent Trustee shall have no incidents

of ownership in or any power, authority or discretion of any kind with respect to any insurance

policy on the life of such Trustee comprising a part of the trust.  All such powers, authorities,

discretions and incidents of ownership shall rest exclusively in the discretion of the Trustee who

is an Independent Trustee.

2.    For the purposes of this Agreement, a Trustee, other than the named initial Trustees, is an "Independent Trustee" only if such Trustee (i) is not CHRISTINA, CHRISTINA's legal representative, or a presumptive remainder beneficiary of the trust; (ii) does not have a legal obligation to support CHRISTINA; and (iii) is not a "related or subordinate party" (as defined in section 672(c) of the Internal Revenue Code) to any grantor who is living, to CHRISTINA, to any presumptive remainder beneficiary of the trust, or to any ancestor, issue or spouse of CHRISTINA.

3.    No Trustee acting hereunder shall exercise, or be deemed to have, any power that would cause the trust estate to be included in such person's estate for the purposes of any tax payable to a federal, state or other governmental authority, or cause any gift by a Trustee to the trust to be regarded as incomplete.  Any Trustee, acting alone, shall have the right at any time to release, renounce or disclaim any interest or power that might be construed to defeat such intentions. This provision shall not affect the rights of the Commonwealth of Massachusetts (or any other state) to payments pursuant to Article III of this Agreement.

E.    **Legal Obligations Not Relieved.**  No provision of this Agreement shall be construed as relieving any person of his or her legal obligations, including the obligation to support any beneficiary hereunder, and no part of the income or principal of the trust shall be used to satisfy any such legal obligations.

F.    **Investments.**  The Trustees may employ investment counsel; consult with such investment counsel on any matters relating to the retention, sale, purchase, investment, or reinvestment of securities or other property; delegate to such investment counsel the fiduciary's investment authority; and pay such investment counsel reasonable compensation for such

51383599 1                          13

services in addition to the regular compensation of the Trustees. The Trustees may act upon or refrain from acting upon the advice of such investment counsel in whole or in part, and to the extent that the Trustees rely upon the advice of such investment counsel or rely upon such investment counsel's exercise of delegated investment authority, the Trustees shall not be liable for any action taken, except in the case of their own gross negligence or willful misconduct.

      **G.**    **Retention of Trust Property.** The Trustees shall have the power and discretion to retain trust principal in the form and character in which received and to invest in any kind of property that the Trustees shall select in the Trustees' sole, absolute and uncontrolled discretion, whether or not such property is income-productive and/or optimally preserves the capital of the trust, whether or not the trust principal as a whole is invested in a diversified portfolio, and whether or not such property is generally authorized for trust investments.

      **H.**    **Requirement of Survival**. No individual beneficiary shall be considered to have survived the event terminating any trust and be entitled to any trust funds as a result thereof unless such beneficiary survives for at least ninety (90) days after such event.

      **I.**    **Successor Trustee**. No Trustee has a duty to examine the transactions of any prior Trustee. The Trustee is responsible only for those assets which are actually delivered to such Trustee. No successor or additional Trustee shall be required to inquire into the acts or audit the books of any predecessor or other Trustee, but in such Trustee's discretion may accept the statement or rely on the books of the predecessor or other Trustee to establish the property and accounts of the trust.

**J.**    **Governing Law; Jurisdiction.**

1.    This trust shall be subject to the jurisdiction of the state in which CHRISTINA resides or, in the discretion of the Independent Trustee(s), in the jurisdiction in which a Trustee resides or has his, her or its principal place of business

2.    Except as authorized under the following provisions of this section, the validity, construction and administration of this Agreement and any trust hereunder shall be governed by the laws of the Commonwealth of Massachusetts, subject, however, to the provisions of Article I requiring the trust to qualify as a trust referred to in 42 United States Code sections 1396p(d)(4) and 1396p(c)(2)(B).

3.    To the extent permitted by law, the Independent Trustee(s) may transfer the situs and assets of the trust to another jurisdiction, and from any transferee jurisdiction to another jurisdiction.

4.    The Independent Trustee(s) shall not exercise any powers under the preceding subsections of this section in any manner that would alter any beneficial interest in this trust, or that would affect the following provisions of this Agreement: Article I, Article III and sections A, J.2, O, and Q of this Article.

**K.**    **Definition of Trustee.**  Except as otherwise provided herein, any Trustee who acts under this Agreement shall have all of the duties, obligations and liabilities and may exercise all of the rights, powers and discretions and shall be entitled to all of the privileges and immunities granted to the named Trustee.  Any references in this Agreement to "the Trustee," "the Trustees," or "the fiduciaries" shall include (unless otherwise expressly provided) all Trustees.

51383599 1

15

**L.    Fiduciary Compensation.**  The Trustees shall be entitled to reasonable

compensation for services rendered

**M.    Management Powers of Trustee.**  In addition to all statutory, inherent and

implied powers and other powers conferred on the Trustee elsewhere in this Trust Agreement

and by law, the Trustee shall have, without limitation by reason of enumeration, authority as

follows:

To retain, without liability for loss or depreciation resulting from such
retention, any property, real or personal and wherever located, received by the
Trustee and to invest and reinvest from time to time all or any part of the trust
assets in any property the Trustee may select, wherever located, including without
limitation shares of stock, common or preferred, investment companies registered
under the Investment Company Act of 1940, common trust funds, bonds,
debentures, notes, securities (including the funds administered by and the stock
and other securities of any corporate Trustee or of any corporation related thereto
and the investment companies for which any corporate Trustee, or any
corporation related thereto, is acting as investment advisor, custodian, transfer
agent or administrator), life insurance and annuity contracts, or other real or
personal property, regardless of the percentage of assets represented by such
retained or invested property or the proportion of the trust property invested in
similar assets, and whether or not such property is productive of income; and to
make and change investments from time to time.

To sell, at public or private sale, grant options to purchase, exchange and
alter property of the trust, real or personal, at any price that the Trustee shall
consider represents an adequate consideration and upon any terms that the Trustee
shall determine to be advisable.

To lease property on any terms and conditions and for any period although
extending beyond the period of any trust; to insure, improve, repair, alter and
partition trust property; to erect or raze improvements; to grant easements; and to
subdivide and dedicate to public use.

To cause any of the investments that may be delivered to or acquired by
the Trustee to be issued, held or registered in the name of the Trustee, in
negotiable form, in the name of a nominee or in any form in which title will pass
by delivery; and any corporation or its transfer agent may presume conclusively
that the named owner is the actual owner of securities submitted for transfer.

51383599 1

16

To exercise in person or by proxy, all voting, option, subscription, reorganization, consolidation, merger and liquidation rights and all other rights and privileges, of whatever nature, incident, appurtenant or pertaining to securities held in trust, including without limitation all options to purchase shares of common stock of any corporation, regardless of the percentage of assets represented by such shares; to enter into any covenant or agreement binding any trust and to purchase any new securities issued as a result of or in connection with any such act.

To employ legal and investment counsel, custodians, accountants and other agents for the transaction of any business of the trusts created herein, to defend the purpose of the trusts and to prevent trust assets from being reached by any beneficiary or any spouse, child or creditor of any beneficiary; to incur the expenses thereof in addition to the other usual costs of trust administration; and to rely, without liability, on the actions and advice of any such agent.

To disclaim, without court approval, any property otherwise passing to any trust established herein.

To make allocations to any separate trust created herein or distributions in satisfaction of any gift provided for hereunder in cash or in kind, or partially in cash and partially in kind, in divided or undivided shares, and to allocate specific assets in whole or in part to particular shares or distributions on a non pro rata basis without taking into account (i) the income tax basis of specific assets and (ii) whether such assets are exempt from federal generation-skipping transfer tax.

N.     **Power to Delegate.**  Any Trustee acting hereunder may delegate, at any time or from time to time, any or all of such Trustee's rights, duties, obligations and powers to any other Trustee acting hereunder; provided, however, that any such delegation shall be revocable at any time and provided, further, that any discretion vested exclusively in an Independent Trustee shall not be delegated to any other Trustee who is not an Independent Trustee.

O.     **Accountings.**  The Trustees shall prepare annual periodic accountings.  The Trustees shall provide copies of such annual accountings to CHRISTINA or to CHRISTINA's legal representative, if any, if requested, and, if requested, to the Commonwealth of Massachusetts, Office of Medicaid, or its equivalent in another jurisdiction, if CHRISTINA is then receiving or is an applicant for SSI or Medicaid

51383599 1

17

**P.**     **Approval Required for Trustees' Actions.**  Notwithstanding any power granted to the Trustees under this Article, the approval of a majority of the Trustees in office shall be required to act in any matter affecting the trust, except when there are less than three Trustees, in which case unanimous approval shall be required, and except where a matter is vested in the exclusive discretion of an Independent Trustee, in which case the approval of the Independent Trustee (or if more than one, a majority of the Independent Trustees), and no other approval, shall be required to act on such matter.

**Q.**     **Spendthrift Provision.**  To the extent allowed by law, no money or property payable or distributable under this trust shall be pledged, assigned, anticipated, or encumbered by any beneficiary hereunder or be in any manner liable in the possession of the Trustees for the debts, contracts, or obligations of any beneficiary, voluntary or involuntary, or for any claims, legal or equitable, including claims for support, against any beneficiary.  The provisions of this section shall not affect, alter or diminish the rights of the Commonwealth of Massachusetts as provided in Article III of this Agreement with respect to Medicaid,.

**R.**     **Disclaimers and Releases.**  Any person, other than CHRISTINA, at any time by a writing delivered to the Trustees, to the extent permitted by law, may disclaim irrevocably, renounce, or release, in whole or in part, any interest, benefit, right, privilege or power granted to such person by this instrument.

**S.**     **Trust Situs**.  The Trustee may change the situs of administration of any one or more of the trusts created hereunder from one jurisdiction to another jurisdiction, in which case the tax and other laws of such other jurisdiction (other than laws of construction which shall continue to be governed by Massachusetts law) shall apply and the courts of such other

51383599 1

jurisdiction shall have the power to effectuate the purposes of any such trust until its situs is further changed.  The power to change the situs of administration shall be a continuing power which may be exercised by the Trustee at any time or from time to time.  The determination of the Trustee as to any such removal or change in situs of administration shall be conclusive and binding on all persons interested or claiming to be interested in any trust hereunder.  In exercising discretion, the Trustee may take into account such factors as the Trustee may deem appropriate, including but not limited to the residence of one or more of the beneficiaries of such trust, the nature of the assets under administration such as the location of real property held in any such trust, or the residence or place of business of the Trustee.  If the Trustee determines that a change in the situs of the administration of a trust would be appropriate but for the fact that the Trustee is not qualified to act as Trustee in such other jurisdiction, then the Trustee may resign.  Notwithstanding the authority of the Trustee to change the situs of administration of any trust, the Trustee shall not be under any duty to do so nor shall the Trustee be liable to any person interested in a trust by reason of any expense incurred in either changing the situs or failing to change the situs of administration.

      **T.**      **Definitions, Miscellaneous.**

      **1.**      **Estate.**  Whenever this Agreement directs or permits the distribution of property to a person's "estate," it shall be construed to mean that such property is to be distributed to the executor or other personal representative of that person to be held, administered, and distributed as though such person had owned such property on the date of his or her death.

51383599 1

19

**2.    Conservator, Guardian.** The terms "conservator" and "guardian" in this Agreement shall include all such fiduciaries or representatives under the laws of any state or of any nation other than the United States who exercise care or carry out other fiduciary obligations with respect to CHRISTINA analogous to the duties and obligations of conservators or guardians under the laws of the Commonwealth of Massachusetts.

**3.    Internal Revenue Code.** The term "Internal Revenue Code" shall mean the U.S. Internal Revenue Code of 1986, as amended, and regulations promulgated thereunder.

**4.    Gender, Number.** The gender and the number of any word shall be construed to include another gender or number wherever appropriate.

**U.    Captions.** The captions in this Agreement are for convenience of reference only and shall not be deemed to define or limit the provisions hereof or to affect their construction and application.

**V.    Probate Court.** For all purposes hereunder a reference to the Probate Court shall be deemed to refer to the Court that would have jurisdiction over CHRISTINA's estate if such estate had been established.

**W.    Execution and Identification of Agreement**.  This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed an original and may be referred to as "THE CHRISTINA SANTIAGO IRREVOCABLE SPECIAL NEEDS TRUST."

IN WITNESS WHEREOF, I have hereunto set my hand and seal as of the day and year first above written as ORDERED by The United States District Court for the District of Massachusetts.

_____
KEN W. SHULMAN, Trustee

_____
NANCY ROSARIO, Mother of
CHRISTINA SANTIAGO

_____
MICHAEL MILLER, Guardian of
CHRISTINA SANTIAGO

The Creation of the within CHRISTINA SANTIAGO IRREVOCABLE SPECIAL NEEDS TRUST is hereby ORDERED by The United States District Court for the District of Massachusetts.

_____

Justice
United States District Court
District of Massachusetts

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

On this _____ day of_____, 2007, before me, the undersigned notary public, personally appeared KEN W. SHULMAN personally known to me or proved to me through satisfactory evidence of identification to be the person whose names is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My Commission Expires:

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

On this _____ day of_____, 2007, before me, the undersigned notary public, personally appeared NANCY ROSARIO personally known to me or proved to me through satisfactory evidence of identification to be the person whose names is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Notary Public
My Commission Expires:

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

On this _____ day of_____, 2007, before me, the undersigned notary public, personally appeared MICHAEL MILLER personally known to me or proved to me through satisfactory evidence of identification to be the person whose names is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My Commission Expires:

**THE CHRISTINA SANTIAGO**
**IRREVOCABLE SPECIAL NEEDS TRUST**

**Schedule A**

1.     $10.00

**EXHIBIT H**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NANCY ROSARIO, INDIVIDUALLY, AS ) | | |
| SHE IS THE ADMINISTRATRIX OF THE ) | | |
| ESTATE OF AWILDA SANTIAGO, ESSEX ) | | |
| PROBATE COURT DOCKET #03P-2499AD1 and ) | | |
| AND AS SHE IS THE ADMINISTRATRIX OF ) | | |
| THE ESTATE OF JOSE SANTIAGO, BERLIN ) | | |
| (CONNECTICUT) PROBATE COURT, ) | | |
| CASE #03-0713 AND NANCY ROSARIO AND ) | | |
| MICHAEL MILLER, AS GUARDIANS OF ) | | |
| CHRISTINA SANTIAGO AND VERONICA ) | | |
| ROSARIO, ESSEX PROBATE COURT DOCKET) | Civil Action #05-CV-10617MLW | |

| | |
|---|---|
| #06P-0507GM ) | |
|     Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| RARE HOSPITALITY INTERNATIONAL, INC. ) | |
| d/b/a LONGHORN STEAKHOUSE ) | |
|     Defendant ) | |

After due consideration of the request of plaintiffs, Nancy Rosario, in her capacity as guardian and mother and next of kin of Veronica Rosario and Christina Santiago, in her capacity as Administratrix of the Estate of Awilda Santiago, Essex Probate Court #03P-2499AD1, and in her capacity as Administratrix of the Estate of Jose Santiago, Berlin, Connecticut Probate Court Case #03-0713 and Michael Miller, in his capacity as guardian of Veronica Rosario and Christina Santiago the net proceeds of settlement of this action payable for the benefit of Christina Santiago be placed in the CHRISTINA SANTIAGO IRREVOCABLE SPECIAL NEEDS TRUST, it is hereby **Ordered** that the CHRISTINA SANTIAGO IRREVOCABLE SPECIAL NEEDS TRUST in the form attached hereto be created by Order of this Court and the net proceeds of the settlement

in this matter allocated to or for the benefit of CHRISTINA SANTIAGO be deposited in said Trust.

_____

By the Court

# EXHIBIT I

# THE VERONICA ROSARIO TRUST

**Established By**

**Nancy Rosario, Mother of Veronica Rosario and**

**Michael Miller, Guardian of Veronica Rosario**

**As Approved by the**

**U.S. District Court for the**

**District of Massachusetts**

**With**

**Ken W. Shulman**

**As Trustee**

**_____, 2007**

**Day Pitney LLP**

**Boston, Massachusetts**

# THE VERONICA ROSARIO TRUST

THIS INTER VIVOS TRUST, approved by Order of the United States District Court for the District of Massachusetts, is established as of the ____ day of _____, 2007, by KEN W. SHULMAN, as initial Trustee (hereinafter, together with all successor and additional Trustees referred to collectively as the "Trustee"):

W I T N E S S E T H:

As authorized by the UNITED STATES DISTRICT COURT for the DISTRICT OF MASSACHUSETTS and NANCY ROSARIO, the mother of VERONICA ROSARIO and MICHAEL MILLER, the guardian of VERONICA SANTIAGO (hereinafter "VERONICA") (Essex County Probate and Family Court, Docket No. 06P0507GM), I, KEW W. SHULMAN of Boston, Massachusetts, deliver and assign to the Trustee the property specified in Schedule A to this Agreement. The Trustee hereby acknowledges receipt of such property and agrees to hold, administer and distribute all of the aforesaid property, together with any property added to the trust by any person, including the beneficiary, and accepted by the Trustee, in accordance with the terms and provisions of this Declaration of Trust as follows:

A.     If VERONICA is under the age of eighteen (18) years, the Trustee shall hold, manage and distribute the trust property in accordance with the provisions of ARTICLE I Trust During Minority.

B.     If VERONICA is between the age of eighteen (18) years and thirty (30) years, the Trustee shall hold, manage and distribute the trust property in accordance with the provisions of ARTICLE II Trust During Majority.

# ARTICLE I

## Trust During Minority

During VERONICA's minority the following provisions shall apply to the property held, managed and disposed of hereunder:

A.    After deducting all proper and reasonable charges and expenses, the Trustee may pay to or for the benefit of VERONICA so much of the net income and principal of the trust (hereinafter the "trust property") as the Trustee shall, in the Trustee's sole, absolute, and uncontrolled discretion, determine is necessary or desirable in VERONICA's best interest for her heath, education and support in her accustomed manner of living.  Any net income not so expended may be accumulated and added to principal at least annually.

Payment of the trust property as authorized under this Article may be made in one or more of the following ways:

1.    by payment to VERONICA's mother or to any legally-appointed guardian;

2.    by payment to any person deemed by the Trustee to have assumed responsibility for the regular payment of VERONICA's living expenses;

3.    by payment directly to VERONICA, if the Trustee determines that such direct payment is appropriate;

4.    by payment directly to the seller or provider of any property, goods, or services to or for the benefit of VERONICA; and

5.    by payment to any other person in any other manner deemed to be in VERONICA's best interest.

B.    If VERONICA shall die before reaching the age of eighteen (18) years, the

Trustee shall hold and distribute the then trust property, if any, pursuant to ARTICLE III

hereunder.

ARTICLE II

Trust During Majority

During VERONICA's majority the following provisions shall apply to the

property held, managed and disposed of hereunder:

A.    After deducting all proper and reasonable charges and expenses, the Trustee may

pay to or for the benefit of VERONICA so much of the net income and principal of the trust

property as the Trustee shall, in the Trustee's sole, absolute, and uncontrolled discretion,

determine is necessary or desirable in VERONICA's best interest for her heath, education and

support in her accustomed manner of living.  Any net income not so expended may be

accumulated and added to principal at least annually.

Payment of trust property by the Trustee as authorized under this Article may be

made in one or more of the following ways:

1.    by payment directly to VERONICA;

2.    by payment to any person deemed by the Trustee to have assumed

responsibility for the regular payment of VERONICA's living expenses;

3.    by payment to VERONICA's legal representative, if one is named;

4.    by payment directly to the seller or provider of any property, goods, or

services to or for the benefit of VERONICA; and

5.      by payment to any other person in any other manner deemed to be in

VERONICA's best interest.

B.      When VERONICA reaches the age of thirty (30) years, the trust for VERONICA

shall terminate and the Trustee shall distribute outright to her all of the remaining trust property.

C.      Except as otherwise provided herein and subject to the provisions of

ARTICLE III, Paragraph A, if VERONICA shall die before the termination of her trust by way

of distributions or her reaching age 30, the Trustee shall on her death pay over that amount

thereof that VERONICA by her will duly admitted to probate shall have appointed upon any

terms and conditions she shall designate, including further trusts, to or for the benefit of any

persons or entities including, without limiting the generality of the foregoing, VERONICA's

estate, VERONICA's creditors and the creditors of VERONICA's estate.  No exercise of this

general power of appointment shall be effective unless it shall make specific reference to this

provision.  If VERONICA shall not have exercised this power of appointment as to all of the

property of her trust, the Trustee shall hold and dispose of such trust property pursuant to

ARTICLE III hereunder.

ARTICLE III

Disposition of Trust Property Upon VERONICA's Death

A.      In the event this trust has not been terminated prior to VERONICA's death, the

Trustee may pay over to the Administrator of VERONICA's estate, or pay directly, from said

property such amount or amounts as VERONICA's Administrator requests in writing for funeral

expenses, the expenses of administering VERONICA's estate, and an amount equal to that

increment of federal and state death tax liability attributable to the inclusion of the property in

VERONICA's estate.  If no Administrator is appointed to administer VERONICA's estate, the

Trustee may pay such amounts directly.  The determination of the amount of the trust property

subject to this power shall be made by the duly appointed legal representative of VERONICA's

estate, and such determination, if made in good faith, shall be final and binding on all persons

interested in this Trust Declaration.

B.      If VERONICA shall not have effectively exercised the power of appointment

provided under the preceding ARTICLE II, Paragraph C as to all of the trust property, the

Trustee shall on VERONICA's death distribute the unappointed property in equal shares to

VERONICA's then living children or, if none, in equal shares to the then living children of

VERONICA's mother NANCY ROSARIO.

C.      If at any time all or any part of the income or principal of any trust created

hereunder becomes distributable outright to any person who has not reached the age of 25

(hereinafter in this Paragraph the "beneficiary"), the Trustee is authorized to distribute all or any

part of such property to the beneficiary directly or, if the beneficiary is a minor, to the

beneficiary's parent or guardian or to any other person or in any other manner deemed to be for

the beneficiary's benefit. The Trustee may also distribute all or any part of such property to a custodian for the beneficiary under a uniform gifts or transfers to minors act of any state, including a custodian designated by the Trustee. The written receipt of the person receiving such distribution shall fully and completely discharge the Trustee with respect to such distribution.

The trustee is also authorized to retain any income or principal of any trust so distributable to a person under the age of 25 (other than VERONICA) in a separate trust for the beneficiary's benefit until the beneficiary has reached the age of 25 or until the Trustee shall earlier determine that the property should be distributed, at which time the trust shall terminate. The Trustee shall pay to or for the benefit of the beneficiary so much of the net income and principal of the trust as the Trustee shall determine is necessary or desirable for the beneficiary's health, education and support in reasonable comfort until the trust shall terminate, at which time all of the trust property shall be distributed to the beneficiary. Any net income not so expended shall be accumulated and added to principal. If the beneficiary dies before the trust shall terminate, the remaining income and principal shall be distributed to the estate of the beneficiary.

## ARTICLE IV

### Administrative Provisions

A.    Powers of the Trustee. In addition to all statutory, inherent and implied powers and other powers conferred on the Trustee elsewhere in this Trust Declaration and by law, the Trustee shall have, without limitation by reason of enumeration, full discretionary power and authority:

To retain, without liability for loss or depreciation resulting from such retention, any property, real or personal and wherever located, received by the Trustee and to invest and reinvest from time to time all or any part of the trust assets in any property the Trustee may select, wherever located, including without limitation shares of stock, common or preferred, investment companies registered under the Investment Company Act of 1940, common trust funds, bonds, debentures, notes, securities (including the funds administered by and the stock and other securities of any corporate Trustee and of any corporation related thereto, and the investment companies for which any corporate Trustee, or any corporation related thereto, is acting as investment advisor, custodian, transfer agent or administrator), life insurance and annuity contracts, or other real or personal property, regardless of the percentage of assets represented by such retained or invested property or the proportion of the trust property invested in similar assets, and whether or not such property is productive of income; and to make and change investments from time to time.

To sell, at public or private sale, grant options to purchase, exchange and alter property of the trust, real or personal, at any price that the Trustee shall consider represents an adequate consideration and upon any terms that the Trustee shall determine to be advisable.

To lease property on any terms and conditions and for any period although extending beyond the period of any trust; to insure, improve, repair, alter and partition trust property; to erect or raze improvements; to grant easements; and to subdivide and dedicate to public use.

To purchase and maintain a residence, or to make distributions for the purpose of purchasing a residence for VERONICA, without incurring liability pursuant to the Massachusetts Uniform Prudent Investor Act.

To cause any of the investments that may be delivered to or acquired by the Trustee to be issued, held or registered in the name of the Trustee, in negotiable form, in the name of a nominee or in any form in which title will pass by delivery; and any corporation or its transfer agent may presume conclusively that said nominee is the actual owner of securities submitted for transfer.

To exercise in person or by proxy, all voting, option, subscription, reorganization, consolidation, merger and liquidation rights and all other rights and privileges, of whatever nature, incident, appurtenant or pertaining to securities held in trust, and in connection therewith to enter into any covenant or agreement binding any trust and to purchase any securities issued as a result of or in connection with any such act.

To employ legal and investment counsel, custodians, accountants and other agents for the transaction of any business of the trusts created herein and to incur the expenses thereof in addition to the other usual costs of trust administration; and to rely, without liability, on the actions and advice of any such agent.

To settle, compromise, contest or abandon claims or demands in favor of or against any trust, including claims arising out of any life insurance policy made payable to the Trustee or held in trust.

To elect either lump-sum or installment distributions from any qualified employee benefit plan including, but not limited to, pension, stock bonus or profit sharing plans, and to make any tax or other election with respect to any such distributions that the Trustee shall deem advisable; provided, however, that no compensating adjustments between income and principal or in the amount of any gift hereunder shall be made as a result of any such election.

To make allocations to any separate trust created herein or distributions in satisfaction of any gift provided for hereunder in cash or in kind, or partially in cash and partially in kind, in divided or undivided shares, and to allocate specific assets in whole or in part to particular shares or distributions on a non pro rata basis without taking into account (i) the income tax basis of specific assets and (ii) whether such assets are exempt from federal generation-skipping transfer tax.

To disclaim, without court approval, any property otherwise passing to any trust established herein.

To refuse to accept title or ownership of any interest in real property which the Trustee determines may be contaminated with hazardous waste for state or federal environmental liability purposes and to take such actions as the Trustee deems appropriate to reduce the risk of loss to the trust as a whole in the event contaminated real estate is held as part of any trust established hereunder, including but not limited to taking all actions required to ensure full compliance with applicable environmental laws.

To divide the property of any trust established herein with an inclusion ratio, as defined in Section 2642(a) of the Code, of neither one nor zero into two separate trusts representing two fractional shares, one with an inclusion ratio of one and the other with an inclusion ratio of zero; to divide the property of any trust established herein into separate trusts with different transferors or to hold such property in a single trust.

To hold the principal of two or more trusts created hereunder in one or more consolidated funds in which the separate shares shall have undivided interests.

In addition to making any distribution otherwise authorized under the terms of any trust under this Agreement, an Independent Trustee may distribute to any beneficiary to whom the income of such trust may then be paid (the "Income Beneficiary") any property of the trust that the Independent Trustee determines to be advisable in order to assist the estate of the Income Beneficiary in taking full advantage of the basis increase available to it under Section 1022(b) of the Code, provided that the following conditions are met: (1) Section 1022 of the Code is then applicable to decedents' estates; and (2) the presumptive remainder beneficiaries of the trust all consent to such distribution. For purposes of this distribution power, the presumptive remainder beneficiaries of a trust shall be those beneficiaries to whom income or principal distributions of trust property may be made immediately following the termination of the Income Beneficiary's interest, assuming that no power of appointment over the trust property is exercised. Notwithstanding any provision herein to the contrary, no Trustee hereunder, shall have the power to use or apply the trust property for purposes of discharging the personal legal obligations of such Trustee or of any beneficiary of any trust created hereunder to support any other person, nor shall any Trustee who is also a beneficiary of any trust created hereunder, other than VERONICA if serving as Trustee, have the power, as

-8-

Trustee, to make discretionary distributions to herself except to the extent necessary for such Trustee's health, education and support in reasonable comfort as those terms are defined in Section 2041 of the Code and the regulations thereunder.

B.    Statements of the Trustee.  The Trustee shall render an account of each trust hereunder, whenever any income producing property is held in it, at least as often as annually to each beneficiary who, during the period covered by the account, was entitled in the Trustee's discretion to a payment of current income from the trust and who is living and of full legal capacity, and if any such beneficiary is not of full legal capacity, to his or her legal guardian or similar legal representative, if any; and the written assent thereto by each living beneficiary who in that period was entitled in the Trustee's discretion to a payment of current income from the trust shall (as to all matters or transactions stated in such account or shown thereby) fully protect the Trustee.  Any beneficiary who is not of full legal capacity shall be deemed to assent in writing to such account if his or her legal guardian or similar legal representative assents in writing to the account or if (such beneficiary having no such legal guardian or representative) any parent of such beneficiary assents in writing to the account.  Nothing in this Section shall be deemed to give anyone power to modify the terms of this Trust Agreement or to alter or to shift any beneficial interest created hereunder.

C.    Succession of Trustee.

1.    Any Trustee of any trust created hereunder may resign at any time by giving at least thirty days' written notice of that intention, delivered personally or by certified mail, to VERONICA or her legal representative or, if she is not then living, to the beneficiaries to whom the income of such trust may then be paid who are nearest of kin to the VERONICA.

2.      The Trustee of any trust created hereunder shall have the power to appoint an individual or institution to act as co-Trustee. Any co-Trustee so appointed may be removed at any time by the Trustee (not including the co-Trustee so appointed) or as otherwise provided in this Agreement and may, but need not, be replaced. A co-Trustee so removed shall promptly deliver the property of such trust, together with the trust records, to the remaining Trustee.

3.      The last acting Trustee named or appointed as provided herein shall have the power to designate a successor Trustee by an instrument signed and acknowledged by such Trustee. Any such designation may be revoked prior to its taking effect, in which case a new designation may be made in like manner.

4.      If any Trustee of any trust created hereunder resigns, is removed or is at any time otherwise unable to act as Trustee and no successor able and willing to serve is designated herein or appointed pursuant to paragraph (2) preceding to serve in that event, LOUIS FARRAH of Lawrence, Massachusetts, shall appoint a successor Trustee that may be himself and if he is not living, the law firm of Day Pitney LLP in Boston, Massachusetts shall appoint a successor Trustee, which shall be an institution which regularly serves as a fiduciary of trusts or an individual who regularly serves as a fiduciary of trusts for the benefit of persons other than members of such individual's family. Such power shall be exercised by sending written notice to the successor Trustee. All references to Day Pitney LLP shall include its successors and assigns.

5.      Any appointment of a co-Trustee or successor Trustee hereunder shall be made by sending written notice to the co-Trustee or successor Trustee. Any co-Trustee or

successor Trustee shall deliver personally or by certified mail a written and

acknowledged acceptance of such trust to the persons then entitled to notice of the

resignation of a Trustee of such trust and to any other Trustee of such trust then serving.

Every Trustee and successor Trustee shall have all the powers, immunities and discretions

conferred upon the original Trustee.  No successor Trustee shall be liable or responsible

for any acts or defaults of any predecessor Trustee in any way or for any loss or expense

from or occasioned by anything done or neglected to be done by any predecessor Trustee.

6.      The co-Trustees at any time in office may at any time and from time to

time agree among themselves, by an instrument in writing signed by them, that any one or

more or all of their powers, duties and authorities hereunder, discretionary or otherwise,

may be exercised by any of them or by a certain one of them.  Any such instrument of

delegation shall be effective for the period specified therein or until earlier revoked by a

further instrument in writing signed and delivered by any co-Trustee to the others.  Any

person dealing with the co-Trustees shall be entitled to rely upon any such instrument of

delegation until such person has actual notice of the termination thereof.

7.      Subject to all other provisions of this Article with respect to the

appointment of a successor Trustee, if any corporate Trustee or successor Trustee should

merge, reorganize or consolidate with another corporation having trust powers, or

otherwise transfer substantially all of its trust business to another corporation having trust

powers, the corporation which results from such merger, reorganization or consolidation

or which succeeds to such trust business shall serve as Trustee in place of, and with all of

the rights, duties, obligations, liabilities, powers, discretions, privileges and immunities of, the corporate Trustee being replaced.

8.    Any successor Trustee shall have all of the powers herein conferred, and all of the liabilities herein imposed, on the Trustee he, she or it is succeeding.

9.    No appointment of a Trustee, whether corporate or individual, shall be effective until it is accepted, in writing, by the appointee, and may be revoked prior to acceptance and approval. Title to the entire trust property shall vest automatically in any successor and/or additional Trustee without the necessity of any conveyance.

10.    A determination that any individual fiduciary acting hereunder is incapable shall be deemed a resignation by that individual fiduciary as of the date of the determination. For purposes of this Article, an individual fiduciary shall be deemed incapable effective upon the first to occur of (1) appointment of a guardian or conservator of his or her person and/or estate by a court of competent jurisdiction; or (2) certification by the individual's primary physician (or, in the alternative, two physicians) that such person is unable to care for his or her person and/or to manage his or her property.

11.    Subject to all other provisions of this Article with respect to the appointment of successor Trustee, if any corporate Trustee or successor Trustee should merge, reorganize or consolidate with another corporation having trust powers, or otherwise transfer substantially all of its trust business to another corporation having trust powers, the corporation which results from such merger, reorganization or consolidation or which succeeds to such trust business shall serve as Trustee in place and with all of the powers, discretions and immunities of the corporate Trustee being replaced.

ARTICLE V

Miscellaneous Provisions

A.    Irrevocable Trust.  Except as otherwise specifically provided herein, this

Agreement and any trust created hereunder shall be irrevocable.

B.    Income Tax Status of Trust.  This trust is a grantor trust for federal and state

income tax purposes and accordingly all trust income shall be taxable to VERONICA during

VERONICA's lifetime.  VERONICA, or if VERONICA is a minor or otherwise under a legal

disability VERONICA's legal representative, shall have the power at any time, exercisable

individually in a nonfiduciary capacity and without the approval or consent of any person or

entity in a fiduciary capacity, to substitute any property of the trust with other property of an

equivalent value.  This power may be released by VERONICA, or if VERONICA is a minor or

otherwise under a legal disability VERONICA's legal representative, at any time by filing an

acknowledged instrument of release with the Trustee.

C.    Legal Obligations Not Relieved.  No provision of this Agreement shall be

construed as relieving any person of his or her legal obligations, including the obligation to

support any beneficiary hereunder, and no part of the income or principal of the trust shall be

used to satisfy any such legal obligations.

D.    Successor Trustee.  No Trustee has a duty to examine the transactions of any prior

Trustee.  Each Trustee is responsible only for those assets which are actually delivered to such

Trustee.  No successor or additional Trustee shall be required to inquire into the acts or audit the

books of any predecessor or other Trustee, but in such Trustee's discretion may accept the

statement or rely on the books of the predecessor or other Trustee to establish the property and

accounts of the trust.

      E.      <u>Disclaimer of Interests in Property</u>. After the death of VERONICA, any

beneficiary hereunder may, by written instrument signed by him and delivered to the Trustee, at

any time disclaim any part or all of any property or interest in property to which such beneficiary

may be entitled hereunder. To the extent that any property or interest in property is disclaimed,

the Trustee shall distribute or administer such property or interest as if the disclaiming

beneficiary had predeceased VERONICA.

      F.      <u>Trust Situs</u>. The Trustee may change the situs of administration of any one or

more of the trusts created hereunder from one jurisdiction to another jurisdiction, in which case

the tax and other laws of such other jurisdiction (other than laws of construction which shall

continue to be governed by Massachusetts law) shall apply and the courts of such other

jurisdiction shall have the power to effectuate the purposes of any such trust until its situs is

further changed. The power to change the situs of administration shall be a continuing power

which may be exercised by the Trustee at any time or from time to time. The determination of

the Trustee as to any such removal or change in situs of administration shall be conclusive and

binding on all persons interested or claiming to be interested in any trust hereunder. In

exercising discretion, the Trustee may take into account such factors as the Trustee may deem

appropriate, including but not limited to the residence of one or more of the beneficiaries of such

trust, the nature of the assets under administration such as the location of real property held in

any such trust, or the residence or place of business of the Trustee. If the Trustee determines that

a change in the situs of the administration of a trust would be appropriate but for the fact that the

Trustee is not qualified to act as Trustee in such other jurisdiction, then the Trustee may resign. Notwithstanding the authority of the Trustee to change the situs of administration of any trust, the Trustee shall not be under any duty to do so nor shall the Trustee be liable to any person interested in a trust by reason of any expense incurred in either changing the situs or failing to change the situs of administration.

 G. <u>Definitions</u>

 1. All references to a Section of the Code shall mean that Section of the Internal Revenue Code of 1986, as amended, or any corresponding provision hereafter in effect.

 2. The educational expenses of any beneficiary hereunder shall include expenses of tuition, books and all other services and things required in connection with any course of study (including vocational apprenticeships, internships and residencies) approved by the Trustee. Such expenses shall also include the travel and living expenses incurred in connection with a beneficiary's attendance at any educational institutions approved by the Trustee. It is the Settlor's intent that the term "educational institutions" as used herein shall include, without limitation, private schools, colleges, universities, trade schools and graduate schools.

 3. An Independent Trustee of a trust shall mean a Trustee who is not a beneficiary of that trust and is not a related or subordinate party to any such beneficiary, as defined in Section 672(c) of the Code applied as though the beneficiary were the "grantor" under that Section. For purposes of this definition, a beneficiary of a trust shall mean (i) any individual to whom the income or principal of the trust may be paid

currently, and (ii) any individual to whom a future payment may be made other than an individual who may receive a payment from the trust only in the event of the exercise of a power of appointment in favor of that individual.

4.    All references herein to an "applicable state estate tax" shall mean an estate, legacy, succession, inheritance, transfer or excise tax payable to a taxing authority within the United States by reason of the Settlor's death (but shall not include a capital gains tax).

5.    Except as otherwise expressly provided herein, any word referring to a descendant of any person, such as "descendant" and "child," shall include (i) any person who is legally adopted by such person, by a descendant of such person and by persons tracing descent through one or more such legally-adopted persons, but only if such legally-adopted person is adopted before the age of 18; (ii) any person born out of wedlock to a female descendant of such person; and (iii) any person born out of wedlock to a male descendant of such person, but only if he has either been adjudged the father of that person in a judicial proceeding or acknowledged such paternity under oath; provided, however, that any word referring to a descendant of any person shall not include any person who is legally adopted out of such person's line of descendants during the lifetime of his or her parent who is, or who is a descendant of, such person.

6.    The terms "custodian", "guardian" and "conservator" in this instrument shall include all such fiduciaries or representatives under the laws of any state or of any nation other than the United States who exercise care or carry out other fiduciary obligations with respect to VERONICA analogous to the duties and obligations of

custodians, guardians or conservators under the laws of the Commonwealth of Massachusetts.

7.    The term "Administrator" shall include any Temporary Executor, Executor, Temporary Administrator with the Will Annexed, Administrator, Administrator d.b.n. or any other legally appointed representative of a beneficiary's estate.

8.    Whenever this instrument directs or permits the distribution of property to a person's "estate," it shall be construed to mean that such property is to be distributed to the Administrator or other personal representative of that person to be held, administered, and distributed as though such person had owned such property on the date of his or her death.

H.    <u>Construction</u>.

1.    Neither the gender nor the number (singular or plural) of any word shall be construed to exclude another gender or number when a different gender or number would be appropriate.  Unless another meaning is clearly stated or required by context or circumstances, the term "Trustee" shall mean and include all Trustees, co-Trustees and successor Trustees.

2.    The underlined captions set forth at the beginning of the various ARTICLES and Paragraphs hereof are for convenience of reference only and shall not be deemed to define or limit the provisions contained in said ARTICLES and Paragraphs or to affect in any way their construction or application.

3.     Following the Settlor's death, any power, other than a power to appoint trust property, granted to a beneficiary who is under a legal disability may be exercised on his behalf by his legal representative.

4.     For the purposes of this Trust Agreement, any person who does not survive VERONICA by fifteen days shall be deemed to have predeceased her.

5.     In exercising discretion to make any distribution from any trust to any beneficiary hereunder, the Trustee shall not be required to take into account sources of funds available to that beneficiary other than those held under this Trust Agreement.

6.     Any discretion that must be exercised by an Independent Trustee under this Agreement shall be exercised solely by the Independent Trustee, and any co-Trustee who is not an Independent Trustee shall have no ability to participate in that exercise of discretion.

7.     Except as otherwise expressly provided herein, all income of any trust created hereunder accrued and undistributed upon the termination of such trust or upon the termination of the interest of any beneficiary therein shall be treated as if such income had accrued or been received immediately after that termination.

I.    <u>Massachusetts Law</u>.  This Trust Agreement shall be construed in all respects under the laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, I, KEN W. SHULMAN, with the approval of the UNITED STATES DISTRICT COURT for the DISTRICT OF MASSACHUSETTS, have hereto set my hand and seal to this Trust Declaration on _____, 2007.  This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed an original and may be referred to as "THE VERONICA ROSARIO TRUST."

_____
KEN W. SHULMAN, Trustee


COMMONWEALTH OF MASSACHUSETTS

COUNTY OF _____

On this _____ day of _____, 2007, before me, the undersigned notary public, personally appeared KEN W. SHULMAN, personally known to me or proved to me through satisfactory evidence of identification to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My Commission Expires:

We hereby assent to the Establishment of THE VERONICA ROSARIO TRUST.


_____
Nancy Rosario, Mother of Veronica Rosario


_____
Michael Miller, Guardian of Veronica
  Rosario


## COMMONWEALTH OF MASSACHUSETTS

### COUNTY OF _____

      On this ____ day of _____, 2007, before me, the undersigned notary public, personally appeared NANCY ROSARIO, personally known to me or proved to me through satisfactory evidence of identification to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.


_____
Notary Public
My Commission Expires:


## COMMONWEALTH OF MASSACHUSETTS

### COUNTY OF _____

      On this ____ day of _____, 2007, before me, the undersigned notary public, personally appeared MICHAEL MILLER, personally known to me or proved to me through satisfactory evidence of identification to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.


_____
Notary Public
My Commission Expires:

**EXHIBIT J**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY ROSARIO, INDIVIDUALLY, AS )<br>SHE IS THE ADMINISTRATRIX OF THE )<br>ESTATE OF AWILDA SANTIAGO, ESSEX )<br>PROBATE COURT DOCKET #03P-2499AD1 and )<br>AND AS SHE IS THE ADMINISTRATRIX OF )<br>THE ESTATE OF JOSE SANTIAGO, BERLIN )<br>(CONNECTICUT) PROBATE COURT, )<br>CASE #03-0713 AND NANCY ROSARIO AND )<br>MICHAEL MILLER, AS GUARDIANS OF )<br>CHRISTINA SANTIAGO AND VERONICA )<br>ROSARIO, ESSEX PROBATE COURT DOCKET) | Civil Action #05-CV-10617MLW |
| #06P-0507GM )<br>    <u>Plaintiffs</u> )<br> )<br>v.       )<br> )<br>RARE HOSPITALITY INTERNATIONAL, INC. )<br>d/b/a LONGHORN STEAKHOUSE )<br>    <u>Defendant</u> ) | |

After due consideration of the request of plaintiffs, Nancy Rosario, in her capacity

as guardian and mother and next of kin of Veronica Rosario and Christina Santiago, in

her capacity as Administratrix of the Estate of Awilda Santiago, Essex Probate Court

#03P-2499AD1, and in her capacity as Administratrix of the Estate of Jose Santiago,

Berlin, Connecticut Probate Court Case #03-0713 and Michael Miller, in his capacity as

guardian of Veronica Rosario and Christina Santiago the net proceeds of settlement of

this action payable for the benefit of Veronica Rosario be placed in THE VERONICA

ROSARIO TRUST, it is hereby **Ordered** that THE VERONICA ROSARIO TRUST in

the form attached hereto be created by Order of this Court and the net proceeds of the

settlement in this matter allocated to or for the benefit of VERONICA ROSARIO be deposited in said Trust.

_____

By the Court